275 A.2d 919.

WALTER F. COOK, JR. *vs.* ANIHID M. DEMETRAKAS *et al.*

APRIL 13, 1971.

PRESENT: Roberts, C. J., Paolino, Powers and Joslin, JJ.

PAOLINO, J. This is a civil action in negligence, brought to recover damages for personal injuries sustained by the plaintiff in a fall on September 20, 1967. It is before this court on the plaintiff's appeal from an entry of judgment by a Superior Court justice, who granted the defendants' motions for directed verdicts at the conclusion of all evidence introduced at the trial.

It appears from the evidence that on the evening of September 20, 1967, plaintiff, who is an East Providence police officer, while on patrol duty, responded to a radio call from headquarters which directed him to go to the rear of 30 Summit Street in that city to investigate the larceny of some lumber.

The plaintiff police officer reached 30 Summit Street at 8:30 p.m. He talked to a woman at that location, and she advised him that the lumber had been left in the yard by youths who had run off into the area at the rear of the premises. The plaintiff then began to search the wooded area in pursuit of the youths. During his search, he crossed over the rear property line of the Summit Street premises, and into a heavily wooded area owned by defendants

Demetrakas, also owners of City Scrap Metal Company, Inc.[1] To the west, this wooded area ends in a 20-foot high bank which serves as the rear border of City Scrap's premises at 105 Valley Street. While following a path within the wooded area, plaintiff, not noticing the steep embankment, suddenly fell approximately 20 feet off a portion of the embankment and into the rear of 105 Valley Street.

After his fall, plaintiff was taken to the Rhode Island Hospital for admittance and treatment.

The property at 105 Valley Street was owned by defendants, Gregory G. and Anihid M. Demetrakas, and leased to defendant City Scrap, of which defendants Demetrakas are the sole stockholders and officers. While the topographical nature of the property normally reflects a drop in elevation between Summit and Valley Streets, at that time the slope of the embankment was greatly enhanced, resulting in an abrupt end remaining on the bank located at the rear of defendants Demetrakas' buildings. This condition was due to the construction of an addition to the business premises of City Scrap, and excavation carried on incidental to that construction. No barricades or lights were placed on the land. The defendant Douglas Construction and Supply Corp. was the primary contractor responsible for the erection of the additions to City Scrap, but there is a conflict in evidence as to whether City Scrap or defendant construction company had performed the specific excavation resulting in the sharp embankment.

Suit was brought by plaintiff in the Superior Court against Anihid M. Demetrakas, City Scrap, and Douglas Construction and Supply Corp. for damages. Gregory G. Demetrakas was later added as a party-defendant. The case was heard on the issue of liability only.

At the trial, plaintiff called defendant Gregory G. Dem-

---

[1]We shall hereinafter refer to this defendant as City Scrap.

etrakas and he testified that for some time prior to the incident in question, he and other employees of City Scrap had complained to the East Providence Police Department about vandalism and damages to the property of City Scrap in and around the embankment. Mr. Demetrakas also testified that he had previously asked the police to keep a special check on this property including the bank. The police came down to see him in July 1967, and in July and August 1967, Mr. Demetrakas made special requests that police keep an eye on the premises and check the back of the building. However, it is undisputed that on the date of the accident, September 20, 1967, plaintiff's presence on the City Scrap premises was the result of a police call directing plaintiff to proceed to 30 Summit Street and investigate a larceny. This police order was initiated by a telephone request made by an unknown third party.

After the submission of the aforesaid facts and other testimony, all defendants made motions for directed verdicts. The defendants premised their motions on the ground that plaintiff was a licensee when he fell on September 20, 1967, to whom each of the defendants owed no duty as to the condition of the premises, save that either of them should not knowingly let him run on a hidden peril, or wilfully cause him harm. Plaintiff argued, however, that he was on the premises at the invitation, express or implied, of the landowners and their tenant, and that each of the defendants was obliged to use reasonable care so that he might not be injured. The trial justice granted defendants' motions. Upon viewing the evidence in the light most favorable to plaintiff, the trial justice recognized that a jury could find from Mr. Demetrakas' testimony that the latter had expressly invited members of the East Providence Police Department upon the premises in order to suppress or put an end to the condition with which

he and his wife and their tenant was plagued. However, he concluded that the jury could not find, on the evidence before them, that on the evening of September 20, 1967, plaintiff was on the premises in response to such invitation. He pointed out that plaintiff was on the Demetrakas' property in the discharge of a public duty while investigating the complaint of a private citizen and that his investigation of that complaint resulted in his fall. He then noted that:

> "It would have been otherwise if he had been directed by his superior while patrolling his post to make periodic or occasional checks of the bank area to discover or apprehend those who were causing mischief to the Demetrakas property."

He concluded that in the circumstances plaintiff was in the same position as the plaintiff in *Beehler* v. *Daniels, Cornell & Co.,* 19 R. I. 49, 31 A. 582, that his status was that of a licensee, and that on the evidence before them, this was the only conclusion that the jury could come to.

Since the trial justice found no evidence of gross or active negligence, in conjunction with knowledge that plaintiff licensee was on the premises, see *Perry* v. *St. Jean,* 100 R. I. 622, 218 A.2d 484, the motions for directed verdicts were granted.

For the reasons which follow, we affirm the judgment entered below.

The issue which we consider here is whether and under what circumstances a policeman who is injured while in the performance of his duties, has a right to sue an occupant or possessor of land for the negligent maintenance of his premises.

The traditional rule, as espoused by this court in *Beehler* v. *Daniels, Cornell & Co., supra,* (1895), is that in the absence of a statute or an express or implied invitation, a policeman (or fireman) who enters upon premises in the discharge of his duty, has the status of a licensee. 13 A.L.R.

641; 86 A.L.R.2d 1223; 38 Am. Jur. *Negligence* §124 (1941); 65 C.J.S. *Negligence* §63(111) (1966). As a licensee, the occupant owes a policeman only the limited duty of not knowingly letting him run upon a hidden peril, or not wilfully causing him harm. *Perry* v. *St. Jean, supra; Pagliaro* v. *Pezza,* 92 R. I. 110, 167 A.2d 139.

The origin of this negligence theory based on plaintiff's status is found in English common law, which with an eye toward protection of the landowners' proprietary interests, apportioned the duties owed by the occupier of the land depending on whether the plaintiff was a trespasser, licensee or invitee. Only the invitee was given protection if the landowners failed to use reasonable care in the maintenance of his premises. 2 Harper & James, *The Law of Torts* (1956), §27.1 at 1431.

However, the history of the law has been towards broadening the class of invitees or business guests, 2 Harper & James, *supra,* §27.12 at 1478. In conferring the status of invitee upon a woman who was injured while entering a church to prepare a church supper, this court said in *DeMello* v. *St. Thomas Church,* 91 R.I. 476, 479, 165 A.2d 500, 502:

> " 'The occupant of land is bound to use ordinary care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, express or implied, for the transaction of business, *or for any other purpose beneficial to him.* * * * Invitation by the owner or occupant is implied where the person going on the premises does so in the interest or for the benefit of such owner or occupant * * *.' " (Emphasis supplied.)

We do not hesitate to say that under certain circumstances, a police officer, while in the performance of his duties, can be classified as an invitee. In *Cameron* v. *Abatiell,* 127 Vt. 111, 241 A.2d 310, a city policeman was injured in a fall on stairs leading from the rear entrance

of a business building while he was performing the service of looking for fires and checking the security of the building. In conferring the status of invitee on the police officer, the Vermont court considered the nature of the service performed, the knowledge that the plaintiff was in a place where the defendants knew and reasonably must have expected he would be, and the fact that he had performed that service daily for two years prior to the accident. However, the court specifically stated that its holding was limited to the facts presented there. Mr. Justice Keyser noted that the policeman:

> "* * * was not using the stairway to the rear door in an emergency in the discharge of his police duties. His entry on the steps was not to make an arrest or chase a thief or burglar. The circumstances of this case distinguishes it from those cases arising in other jurisdictions which deny recovery." *Id.* at 117, 241 A.2d at 314.

In the instant case, plaintiff was not specifically performing a routine function for City Scrap. Neither could his actions amount to a response to any invitation of defendant Demetrakas. The plaintiff was responding to a request from a third party at 30 Summit Street. His entry onto the Demetrakas' property was for the emergency purpose of apprehending a fugitive. Under these facts, viewing the evidence most favorably to the plaintiff, liability cannot be imposed upon defendants Demetrakas and City Scrap.

In the circumstances, we hold that the trial justice was correct in directing a verdict for the defendants Demetrakas and City Scrap.

As an alternate theory of recovery, plaintiff argues that irrespective of the rights of plaintiff against the landowner, liability should be imposed upon defendant Douglas Construction and Supply Corp., as the party creating the dangerous condition. In support of this argument, plain-

tiff cites our decision in *Roe* v. *Narragansett Electric Co.,* 53 R.I. 342, 344, 166 A. 695, 695.

> "There is respectable authority for the proposition that immunity from liability for negligence as to a trespasser does not extend to one who is neither owner nor tenant of the premises on which the trespasser sustained injuries. *Guinn* v. *Del. & Atl. Telephone Co.,* 72 N.J.L. 276; *Humphrey* v. *Twin State Gas & Elec. Co.,* 100 Vt. 414, 139 Atl. 440."

A close reading of that case, however, shows that it is of no help to the plaintiff, and on the contrary, distinguishes the cited authority:

> "These cases are distinguishable from the instant case in that the accident occurred on premises in which the defendant had no greater right than the plaintiff. The injury in each case was received by the transmission of electricity, from the place where presumably the defendant had a license to erect its poles, through a broken wire, to premises over which it had no control. The immunity from liability for negligence with respect to a trespasser or licensee is not confined to the owner of the land or his tenant; it extends to one who has the right, whatever the nature of the tenure, to exclude trespassers from the premises where an accident occurred." *Id.* at 344, 166 A. at 695-96.

In the *Roe* case, suit was brought against a defendant lessee based on negligence in the maintenance of an electric transformer and a fence around it. This court concluded there that since the defendant had a right to erect the fence, and a concurrent right to occupation of the land within it, the lessee's defenses against plaintiff in the suit for negligence were equal to those of the landowner. In the facts at bar, clearly the defendant construction company had control over the portion of the premises involved in its construction activities, and under *Roe* v. *Narragansett Electric Co., supra,* the defendant Douglas Construc-

tion and Supply Corp. is subject to no greater liability than the defendants Demetrakas and City Scrap.[2]

We, therefore, conclude that the trial justice correctly granted the defendants' motions for directed verdicts. The plaintiff's objections are hereby overruled, and the judgment appealed from is affirmed.

*Abedon, Michaelson, Stanzler & Biener, Richard A. Skolnik, Milton Stanzler,* for plaintiff.

*Francis A. Kelleher,* for City Scrap Metal Co., Inc., Anihid M. Demetrakas and Gregory G. Demetrakas; *Keenan, Rice, Dolan & Reardon, John F. Dolan,* for Douglas Construction & Supply Corp., defendants.

---

[2]See also Restatement of Torts §384

"§384. Liability of Persons Creating Artificial Conditions on Land on Behalf of Possessor for Physical Harm Caused While Work Remains in Their Charge

One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge.

"Comment:

* * *

"*h.* As is stated in this Section, one who, as servant or contractor, erects a structure or changes the condition of land on behalf of the possessor, is subject to the same but no greater liability for bodily harm done to others while he remains in charge of the work as though he were the possessor of the land.

"* * * The servant or contractor shares this position of the possessor because he has been put in exclusive charge of a part of the land for the purposes of accomplishing the possessor's will as to its development and use."