WILLIAM G. BUCHANAN, APPELLANT, V. PRICKETT & SON, INC., ET AL., APPELLEES.

279 N. W. 2d 855

Filed June 12, 1979. No. 42246.

William J. Ross of Ross, Schroeder & Fritzler, for appellant.

Knudsen, Berkheimer, Endacott & Beam, for appellees.

Heard before BOSLAUGH, McCOWN, CLINTON, and WHITE, JJ., and TESAR, District Judge.

CLINTON, J.

This is an action for personal injuries suffered by the plaintiff, a member of the Elm Creek volunteer fire department, when he, along with other members of the department, responded to a call to the scene of a collision between two motor vehicles, one of which was a gasoline tanker. After plaintiff arrived at the scene and while he was in the process of trying to extricate the transport driver from the tractor cab in which he was pinned, an explosion and fire occurred and the plaintiff was badly burned. The defendants are the persons—owners, operators,

or lessees of the second vehicle—whose negligence was allegedly the cause of the collision. The primary legal question involved in this case is whether the plaintiff's claimed right of recovery is barred by the operation of the so-called "fireman's rule," or whether the "rescue doctrine" should apply and the plaintiff be permitted to recover if there be proof that the negligence of all or some of the defendants was a proximate cause of the collision, the fire, and the plaintiff's injuries. The defendants filed a motion for summary judgment which was granted and the plaintiff has appealed to this court. We affirm.

The alleged facts of the collision as set forth in the petition of the plaintiff are these. On July 8, 1974, the defendants' truck was traveling westward on Interstate Highway No. 80 and entered the exit ramp on the northeast quadrant of the Elm Creek interchange and stopped for a stop sign at the west end of the ramp where it intersects U. S. Highway No. 183 which runs north and south over the interstate highway. At the time the defendants' truck was stopped at the traffic sign, the loaded tanker, operated by Dale L. Damon, was moving north on highway 183 toward the junction of the ramp and the highway. As the tanker neared the junction, the defendants' truck drove onto highway 183 and made a left turn to go south on that highway. Damon was unable to avoid a collision with defendants' truck and went down the embankment on the east side of highway 183, and the tanker overturned.

The following facts are established by the deposition of the plaintiff and are undisputed. The plaintiff was, at all times here involved, a duly elected and appointed member of the Elm Creek volunteer fire department. The job of the department and its members was to fight fires and do rescue work. The plaintiff received no compensation for his services as a volunteer fireman. When, on the occasion here involved, he and the other volunteer firemen,

together with firefighting equipment, arrived at the scene of the collision, the plaintiff observed that Damon was pinned in the tractor with one leg trapped between the seat and the floor. At the time, gasoline was leaking from the tanker and running through the cab and onto the ground where it was forming pools of gasoline. As the day was hot, the gasoline was vaporizing in considerable volume and, when the plaintiff reached Damon, he found it difficult to breathe. He was acutely concerned about the danger of fire. Because of the fumes, he occasionally had to leave briefly and then renew his attempts to free Damon. During his second or third effort, the explosion and fire occurred. Damon was burned to death and the plaintiff was severely burned. The plaintiff has received and perhaps is still receiving workmen's compensation benefits as provided by section 48-115, R. R. S. 1943, as amended. He has suffered additional damages by reason of pain and suffering and time lost from his regular employment as an electrical lineman and a moonlighting job in a feed mill. To this latter employment he has been unable to return.

The fireman's rule, although not referred to by that name in this jurisdiction, has been applied in Wax v. Co-Operative Refinery Assn., 154 Neb. 805, 49 N. W. 2d 707; and Fentress v. Co-Operative Refinery Assn., 149 Neb. 355, 31 N. W. 2d 225. The fireman's rule negates liability to firemen by one whose negligence causes or contributes to the fire which in turn causes injury or death of the fireman. Giorgi v. Pacific Gas & Elec. Co., 266 Cal. App. 2d 355, 72 Cal. Rptr. 119. The rescue rule as applied in Nebraska has been stated thus: It is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person or the property of a third person from harm. The extent of the risk which the volunteer is justified in assuming under the circumstances increases in proportion to the

imminence of the danger and the value of the advantage to be realized from meeting the danger and attempting to remove or eliminate the hazard; that is, the less the danger to the third party, the less the risk the volunteer is justified in taking. Wolfinger v. Shaw, 138 Neb. 229, 292 N. W. 731. The rescue doctrine contemplates a voluntary act by one who, in an emergency and prompted by spontaneous human motives to save human life, attempts a rescue which he had no duty to attempt by virtue of a legal obligation or duty fastened on him by his employment. Nastasio v. Cinnamon, 295 S. W. 2d 117 (Mo., 1956).

The principal point which the plaintiff urges is that, because a volunteer fireman is unpaid and because in this instance the plaintiff was not fighting a fire but attempting to save a human life, the rescue rule should apply to the exclusion of the fireman's rule.

The rationale of the fireman's rule varies somewhat from jurisdiction to jurisdiction. In Nebraska the rule has been stated at least twice. In Fentress v. Co-Operative Refinery Assn., *supra*, we said: "The rule is that in the absence of any statute or ordinance prescribing a duty on the part of the owner of premises to members of a public fire department, the owner is not liable for injuries to such a fireman except those proximately resulting from willful or wanton negligence or a designed injury. . . . We are not here dealing with a hidden danger or peril. The condition of the burning transport was an obvious one. The danger was a patent one and one which the plaintiff realized as his own testimony discloses. He discounted the danger of explosion from the trailer tanks because the tanks were vented and the vents open." In Wax v. Co-Operative Refinery Assn., *supra*, we said: "Each authority cited in the Fentress case affirms the fact that a fireman or individual fighting a fire on the premises of an owner or occupant is a bare licensee to whom the owner or

occupant owes no greater duty than to refrain from injuring him by willful or wanton negligence or a designed injury, except in certain cases where there may be the duty to warn of hidden danger or peril known to the owner or occupant but unknown to or unobservable by the fireman in the exercise of ordinary care. Here the danger was not only obvious, but also defendant gave warning that there was danger of a second explosion which caused the injuries to and death of decedent.'' We also there said: ''It is generally held that a fireman, or individual who goes to assist in putting out a fire upon premises and is injured, cannot establish liability of the property owner or occupant therefor by simply establishing negligence in starting the fire, but only by showing that his injuries were designed or proximately caused by willful or wanton negligence of such owner or occupant or by some hidden danger or peril upon the premises, known by the occupant or owner but unknown by the fireman or individual, and not, if reasonable opportunity is given, disclosed to such persons or their superiors, who were unable to observe the same by exercising ordinary care. Therefore, it is immaterial whether or not the fire was started by negligence or that such was continuing negligence as argued by plaintiff, since a fireman or individual who undertakes to fight a fire knows that it exists and as licensee ordinarily assumes the risk of the premises as he finds them. 141 A. L. R. 585.''

The rule, although phrased with reference to liability of owners or occupants of real property, applies to circumstances where the property, which is afire or from which the danger arises, is personal property and not located on real property owned or occupied by the owner of the personal property. Wax v. Co-Operative Refinery Assn., *supra*. We have used the same ''licensee'' rationale in the case of injury to policemen, saying: ''The occupier of

the premises owes to the licensee the duty to warn, if an opportunity is afforded, of hidden dangers known to the occupier but unknown to and not readily observable by the licensee." Nared v. School Dist. of Omaha, 191 Neb. 376, 215 N. W. 2d 115.

Other jurisdictions have made a more penetrating analysis of the public policy considerations underlying the fireman's rule and have placed the rule upon the ground that the ordinary risks which a fireman encounters in the performance of his duty in fighting fires and protecting life and property are those which he has assumed a duty to perform and to which he has assumed the risk in a "primary" sense. Armstrong v. Mailand, 284 N. W. 2d 343 (Minn., 1979); Walters v. Sloan, 20 Cal. 3d 199, 142 Cal. Rptr. 152, 571 P. 2d 609; Krauth v. Israel Geller and Buckingham Homes, Inc., 31 N. J. 270, 157 A. 2d 129. What the courts mean by this is that the risk is one which the fireman has engaged to encounter by virtue of his employment and one which it is his duty to accept and that the person who negligently causes the fire has therefore not breached a duty owed the fireman. The reason for the rule is that fires will inevitably occur and it is not desirable as a matter of public policy to fasten the cost of the risk involved in firefighting on the owner or user of the property. Rather, firemen's pay and reimbursement, or at least partial indemnification for losses incurred as a consequence of meeting the risks of fire, should be borne by government. The undesirability of imposing this cost upon the property owner was one of the factors recognized in Wax v. Co-Operative Refinery Assn., *supra*. However, the above-mentioned cases differ from Wax in that the courts which have adopted the doctrine of assumption of the risk in the primary sense have ceased to define duties of care with respect to categories of property users such as invitees, licensees, and trespassers.

The term "assumption of the risk in the primary

sense" has apparently not been used in this jurisdiction although the rationale which this court has used does not seem to be inconsistent with the doctrine. In both Fentress and Wax, the former involving a volunteer fireman and the latter a professional fireman who had volunteered, we noted that a public fire department was the agency performing the duty. We were thus indicating that the duty of the firemen was one which they had assumed by membership or service in the firefighting organization. We also noted that whether or not the fire was caused by negligence was immaterial since the person who undertook to fight the fire assumed the known risks. We then pointed out in those cases, both of which grew out of the same accident, that the risk of explosion was known and obvious. Thus, the Wax rationale seems to include an imprecisely developed assumption of the risk in the primary sense doctrine although the doctrine was not so designated. Whether one relies upon the limitation of duty owed a licensee or upon the theory of assumption of the risk in the primary sense, the result is the same in that the person causing the fire has breached no duty owed to the firefighters.

In Armstrong v. Mailand, *supra*, the Minnesota Supreme Court stated that firemen are owed a duty of care unless they have assumed the risk of the hazard in the primary sense, but that firemen assume all risks reasonably apparent to them in firefighting. The import and rationale of Krauth and Sloan are similar. However, there were elements involved in all three of these cases which are not present in the one before us. We should not, therefore, be understood as adopting in toto the complete rationale of those opinions. We are not persuaded and do not hold in this opinion that the policy of defining the extent of the duty of care, by use of the categories invitee, licensee, or trespasser, should be abrogated. Such classifications still have a rational function.

See, e.g., Nared v. School Dist. of Omaha, *supra.* Moreover, under the facts of this case, a reconsideration of those categories is unnecessary.

In the present instance, the plaintiff went to the scene of the collision for the apparent purpose of fighting or preventing fire as a member of a fire department. The record establishes the fire department does rescue work and this is one of the duties of its members. The record shows without contradiction the danger of fire or explosion was fully recognized by the plaintiff. That was the very reason he undertook his heroic efforts to free Damon. The risks causing the injury in this case were those encountered by firemen generally and were not unknown or concealed risks of which warning needed to be given if opportunity afforded.

Attempting to distinguish between "firefighting" and "rescue" operations is unacceptable for another reason. Any aspect of firefighting may involve rescue if there is a person or persons in the endangered building or, as in this case, trapped in a vehicle. In such instances, the firemen who man the hoses or pumps are in fact as much a part of the rescue effort as those who man the ladders or the nets or who carry victims to safety. It is not possible to draw a substantive distinction founded upon the particular task being performed.

The plaintiff was not being paid for his services. This was also true of the plaintiffs in Fentress and Wax. Volunteer firemen, although uncompensated, undertake the same duties as paid firemen. We may even take note of the fact that in Nebraska some fire departments consist of both paid and volunteer members. It would be impractical to distinguish between volunteers and paid firemen in those cases. Nebraska affords both workmen's compensation coverage and perhaps other benefits to paid firemen. For volunteer firemen it provides only workmen's compensation benefits. Whether more

of the burden of injury resulting from the risks involved should be assumed by government is a question for the public policymakers to determine.

The fireman's rule and not the rescue doctrine applies under the facts of this case. The motion for summary judgment was properly sustained.

AFFIRMED.

TESAR, District Judge, not participating in the decision.