Mary L. BUREN, Administratrix of the Estate of Joseph K. Buren, Deceased, et al., Appellants,

v.

MIDWEST INDUSTRIES, INC., et al., Appellees.

Court of Appeals of Kentucky.

Feb. 7, 1964.

Rehearing Denied June 26, 1964.

John B. Breckinridge, Atty. Gen., Frankfort, James H. Lucas, Asst. Atty. Gen., Bowling Green, for appellant.

B. M. Vincent, Brownsville, for appellees.

Raymond C. Stephenson, Ephriam K. Lawrence, Jr., Louisville, for appellants.

Norman A. Curtis, Robert L. Sloss, Louisville, for appellees.

WADDILL, Commissioner.

The central question in this case is whether failure of the owners of a building to comply with applicable fire safety ordinances (for example, ordinances requiring sprinkler systems, fire walls and stops, etc.) results in liability for the deaths of firemen killed while fighting a fire. It may be assumed for purposes of analysis that there was sufficient evidence for the jury to find that the deaths were proximately caused by the deceptive speed with which the fire suddenly enveloped the premises and that this would not have occurred if the building had been constructed and maintained in strict accordance with the law.

The various decisions on the subject are collected and discussed in 13 A.L.R. 584–595 and 86 A.L.R.2d 1205–1221. See also the analysis in 2 Harper & James, The Law of Torts, § 27.14, pp. 1503–1505. Thus we need not attempt an exhaustive survey of our own. Suffice it to say that as a general rule the owner or occupant is not liable for having negligently created the condition necessitating the fireman's presence (that is, the fire itself), but may be liable for failure to warn of unusual or hidden hazards, for actively negligent conduct and, in some jurisdictions, for statutory violations "creating undue risks of in-

jury beyond those inevitably involved in fire fighting." (Quotation taken from Krauth v. Geller, 31 N.J. 270, 157 A.2d 129, 131).

■ Non-liability of the owner or occupant frequently has been placed on the theory that the fireman is but a licensee, whether or not the fire department has been summoned. In this respect, however, we concur in the observation of the New Jersey Supreme Court that "justice is not aided by appending an inappropriate label and then visiting consequences which flow from a status artifically imputed," and are inclined to agree that he is neither a licensee nor invitee, but occupies a status sui generis. Krauth v. Geller, 31 N.J. 270, 157 A.2d 129. A better basis of non-liability is that "it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement," the precise risk which the public pays him to undertake. Id. But whatever may be the technical theory in which the underlying policy is clothed, this is the prevailing result at common law, and it is not challenged in this case.

■ The first premise on which appellants rest their claim is that the intended benefits of the applicable fire safety ordinances of the City of Louisville extend to and include firemen who enter the premises in response to their duties. In other jurisdictions there is a difference of opinion on this question, depending sometimes on the terminology of the particular ordinances or statutes. The ordinances involved here do not specify for whose protection or benefit they are intended. It is our opinion that such laws are for the protection of the lives and property of all persons who in their rightful pursuits may be affected involuntarily by a fire in or spreading from the premises to which the laws apply. That compliance with fire safety ordinances will necessarily have the effect of reducing the hazards of fire-fighting, however, is no more than incidental to the primary objective of fire prevention and control. The fact is that in the performance of his official function the fireman is a part rather than an object of fire prevention and control.

It may be conceded that "the hazard of fire, and loss of life fighting it," are reasonably foreseeable consequences of a failure to exercise ordinary care in keeping the premises in a safe condition. See Dini v. Naiditch, 20 Ill.2d 406, 170 N.E.2d 881, 86 A.L.R.2d 1184, 1194. The same is true with respect to the negligent creation of the fire in the first place, yet there is no liability to the fireman for that. We see no reasonable basis for a distinction unless, as appellants have argued, it is demanded by public policy. And even there we encounter the identical difficulty. Could it really be said that public policy is less solicitous toward the initial prevention of fire than it is toward the control of fire after it has begun? Surely not. We should expect public policy to be the same in each respect.

It has been said in some cases that a fireman entering the premises has the right to assume compliance with applicable safety ordinances. See Maloney v. Hearst Hotels Corp., 274 N.Y. 106, 8 N.E.2d 296, 297, in which a fireman was killed by an explosion of volatile substances illegally kept on the premises. See also cases cited in Dini v. Naiditch, 20 Ill.2d 406, 170 N.E.2d 881, 86 A.L.R.2d 1184, 1195. Insofar as these decisions reflect the principle that a fireman is entitled to assume compliance with respect to unguarded elevator shafts, open stair wells, exposed wires, and similar hazards to a reasonably safe access to and use of the premises in the manner in which they are ordinarily expected to be used, we have no quarrel with them. (See discussion of New York rule, 86 A.L.R.2d 1216.) And the presence of explosives may predicate liability on the basis either of an unusual hidden hazard or of continuing "active" negligence, as the particular facts warrant. (See 13 A.L.R. 644.) We do not believe, however, that a law violation which has no

direct effect except to permit the more rapid spread of a fire than would otherwise have been the case is analogous. Hence we cannot follow Dini v. Naiditch, 20 Ill.2d 406, 170 N.E.2d 881, 86 A.L.R.2d 1184.

It was brought out in the evidence that many more of the buildings in Louisville were constructed before the advent of the fire safety ordinances than since. From the terminology of § 1301.14, General Ordinances, City of Louisville, it would appear that buildings erected prior to its enactment are not necessarily and in all respects subject to the requirements of the Fire Prevention Code. If a fireman entering a burning building does not know when it was constructed and what, if any, safety ordinances were in effect at that time, how could he know what to assume with respect to its construction? The answer is that he cannot and does not make any such assumptions. As several of the officers testified, fires are unpredictable, and every one is different from the others. The fireman is trained to expect the unexpected. We think it would be highly unrealistic for the law to pretend otherwise.

■■■ It is our opinion that the principle of assumed risk is applicable, at least in spirit if the label be considered in some respects inappropriate. That the fireman is duty bound to assume the risk because he is being paid to do so does not make it any the less voluntary. Except for unusual hazards known to the property owner or occupant but unknown to him, the trained fire fighter is equally cognizant of and better able to evaluate the unpredictable dangers involved. When he arrives on the scene the field is his. The owner has no power to direct or control his actions. He may not order him to stay outside, or to stay off the roof, or to wear a gas mask, or to limit his actions to shooting water into the building from a safe position outside. To hold the owner responsible while denying him any right or discretion to say what the fireman shall or shall not do would not consist with what this court believes to be the fundamental law. of liability by reason of negligence. Having bound his hands, the law cannot justly inflict upon him the consequences of what he might otherwise have been able to prevent. See Suttie v. Sun Oil Co., 15 Pa. Dist. & Co. R. 3. Nor can a jury be permitted to do so. It is not fairly a question of fact, and this is true whether the claim is based on common law or statutory negligence.

There were certain other circumstances in this case which appellants contend were sufficient to authorize a verdict in their favor aside from the principal theory of liability hereinbefore discussed. In these particulars our opinions are as follows:

■■■ (1) The fire started on a "char-broil" grill where steaks which had been dipped in butter were being cooked. Apparently the steaks caught fire and the flames ignited grease that had accumulated and adhered to the inside of a vent over the grill. Mr. Harris, the person in charge of the premises, did not at once telephone the fire department, but attempted to put the fire out with a hand extinguisher until its contents were emptied. According to the testimony and estimates of time most favorable to the plaintiffs' case, this delay may have been unreasonable and negligent. Nevertheless, on the ultimate question of liability there is no logical basis for distinguishing between negligence in this respect and negligence in creating the fire or in maintaining the premises in a fire-safe condition.

■■■ (2) The second fire fighting unit to arrive was Quad 8, in command of Capt. Wright. Mr. Harris met Capt. Wright, accompanied by fireman Thompson, at the door and is alleged to have said, "Captain, it's nothing but a grill fire, come on and I'll show you." There was evidence that at this time Mr. Harris already knew or at least had been told that the fire had advanced through the vent and spread onto the second floor. Assuming the worst in this respect, and without considering the possible excusability of Mr. Harris' actions

by reason of the emergency in which he was acting, we do not believe this occurrence could have had any significant bearing on the deaths of Capt. Buren, Sgt. Wilson and Pvt. Pryor.

The first unit on the scene was Engine Company 18, in command of Capt. Johnson. He testified that as he arrived "I could see fire coming up out of the roof or out of the vent pipe at the back part of this building," and that he immediately raised a ladder and sent one man to the roof with a line and another into the kitchen. His man in the kitchen promptly discovered, and so advised Capt. Johnson, that "the fire is up in the ceiling." All this took place just before Quad 8 arrived at the burning building. Under such circumstances it is hardly possible that the commander and members of Quad 8 or any other unit subsequently arriving could have been misled. (Pvt. Pryor was a member of Quad 8. Capt. Buren was battalion commander and arrived after Quad 8. Sgt. Wilson accompanied Capt. Buren as his aide.)

Assuming that Capt. Wright and fireman Thompson did receive erroneous information from Mr. Harris, there was no evidence that it was communicated to or acted on by any other members of the fire department. In fact, Capt. Johnson actually heard Sgt. Wilson say to Capt. Buren, "Captain the fire is in the second floor too." Thus it was positively established by the plaintiffs' evidence that Capt. Buren and Sgt. Wilson could not have been under any misapprehension, and there was no evidence that any misinformation was given to or acted upon by Pvt. Pryor.

 (3) The structure in which the fire took place was a bowling alley, restaurant and recreation center. A highly inflammable lacquer used in cleaning and polishing the alleys was kept in a 50-gallon drum or drums. Although it was supposed to be (and, according to the defense testimony, was) stored in a specially partitioned room to the south of the building at the other end of the bowling alleys from where the restaurant facilities were situated, appellants contend that there was evidence to support a finding that some of it was in the latter portion of the building. In the main, this evidence boils down to three items, (a) there was definite proof that there was on hand at least one 50-gallon drum with about 5 gallons of unused lacquer left in it (the whereabouts of this container being in issue), (b) photographs taken the day after the fire show what appears to be just such a container standing in the ruins in the east part of the building where the fire first spread with such ferocity and near where the decedents lost their lives, and (c) one of the patrons of the bowling alley, very shortly after leaving the building via the east door, heard a crash and saw a stream of fire "like a blow torch" shoot out the door a distance of 30 feet or so.

We recognize the possibilities suggested by this chain of circumstantial evidence, but believe that to add one inference to another, by concluding first that the can visible in the photographs actually was the specific drum identified in the evidence as containing lacquer, and secondly that it exploded and in so doing proximately contributed to the deaths of any one or more of the firemen, would amount to no more than surmise and speculation. Therefore, we do not consider this particular phase of the evidence sufficient to justify a verdict on any of the theories of liability mentioned earlier in this opinion.

On the whole case it is our conclusion that the defendants were entitled to a directed verdict and that the trial court did not err in granting a judgment n. o. v.

The judgment is affirmed.