Samuel J. HAWKINS, Carrie W.
Watson and Donald G.
Johnson, Appellants,

v.

SUNMARK INDUSTRIES, INC.; Sun Oil
of Pennsylvania, etc.; Tokheim, Inc.;
Kenneth Federspiel; Sayed Kamarei,
Appellees.

Supreme Court of Kentucky.

Dec. 18, 1986.

Rehearing Denied April 30, 1987.

Larry B. Franklin, Michael R. Hance,
Louisville, for appellants.

Robert C. Hobson, J.L. Lenihan, Richard
H.C. Clay, William A. Miller, Sr., William
Henry Wallace, Henry Triplett, Louisville,
for appellees.

## OPINION OF THE COURT

The appellants are three firemen employed by the City of Louisville Fire Department who were called upon to put out a fire in progress at a service station located in Louisville, Kentucky, and who were injured from an explosion that occurred very soon after their arrival.

The appellees are: (1) Sunmark Industries, Inc. and Sun Oil of Pennsylvania (hereinafter referred to as "Sun Oil"), the owners of the property; (2) Kenneth Federspiel, who operated the service station under a lease with Sun Oil; (3) Sayed Kamarei, a motorist who backed his automobile into a gasoline dispenser located on the premises and dislodged it, initiating the fire; and (4) Tokheim, Inc., who had manufactured the dispenser.

The trial court dismissed all claims on grounds they were barred by the so-called "Fireman's Rule." The Court of Appeals affirmed. We are called upon to reexamine the legitimacy of the Fireman's Rule and to decide the extent to which it should apply to this case.

On August 7, 1986, this court rendered an opinion affirming the dismissal of appellants' claims as to the appellees Kenneth Federspiel and Sayed Kamarei. No party to this litigation filed a petition for rehearing of this court's action in that regard. The opinion reversed the dismissal of the claims of appellants as to the appellees Sunmark Industries, Inc.; Sun Oil of Pennsylvania; and Tokheim, Inc. and remanded for further proceedings as to them. Tokheim did not petition for rehearing. Sunmark Industries, Inc. and Sun Oil of Pennsylvania did file a timely petition for rehearing, which we have granted, as to the claims against them.

This case was decided by summary judgment. Therefore, for the purpose of our review, the facts and inferences developed thus far by discovery must be viewed from the standpoint of the plaintiffs against whom summary judgment was entered. A summary judgment is improper unless "it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and

against the movant." *Roberson v. Lampton,* Ky., 516 S.W.2d 838, 840 (1974).

Thus viewed, the facts are as follows: Kamarei drove his car into a service station owned by Sun Oil, and leased and operated by Federspiel, to ask for directions from the service station personnel. After receiving the directions, he accidentally bumped against a gasoline dispenser located on the premises, manufactured by Tokheim, Inc. Although the collision was relatively minor, the gasoline dispenser was knocked loose from its attachment, the electrical wiring in the dispenser was disturbed, and a short circuit occurred initiating a small fire.

After an unsuccessful attempt to extinguish the fire, the service station attendant on duty called the fire department, which responded almost immediately. Upon arrival at the scene, the department personnel found a small, non-threatening liquid fire burning at the base of the gasoline dispenser. Within seconds after their arrival, as one of the appellants was approaching the dispenser with a dry chemical extinguisher intending to put out the fire, the small fire exploded into a fire bomb causing serious injuries to all three of the appellants.

At the time summary judgment was entered there had been evidence developed, albeit disputed, indicating that the cause of the explosion was a build-up of pressure due to a failure of a relief valve caused by either defective design or construction of the gasoline dispenser. When the pressure reached a certain point, this caused an explosion of the gasoline dispenser that created a flame thrower effect, injuring the appellants. Additionally, although the facts on this point are far from clear, there is some indication that Sun Oil was negligent in original construction in failing to properly mount or attach the gasoline dispenser so as to withstand minor impact. Assuming negligence in this respect could be established against Sun Oil, it would, of course, relate only to the origin or inception of the fire, and not to the subsequent explosion which was the immediate cause of the appellants' injuries.

The Fireman's Rule as it applies in this state was enunciated in *Buren v. Midwest Industries, Inc.,* Ky., 380 S.W.2d 96, 97–98 (1964), as follows:

"[A]s a general rule the owner or occupant is not liable for having negligently created the condition necessitating the fireman's presence (that is, the fire itself), but may be liable for failure to warn of unusual or hidden hazards, for actively negligent conduct[1] and, in some jurisdictions, for statutory violations 'creating undue risks of injury beyond those inevitably involved in fire fighting.'"

In the *Buren* case, our Court applied the Fireman's Rule as a bar to claims made on behalf of the estates of deceased firemen whose deaths were allegedly "caused by the deceptive speed with which the fire suddenly enveloped the premises ... [which] would not have occurred if the building had been constructed and maintained in strict accordance with the [fire] law." 380 S.W.2d at 97.

The questions raised on the present appeal are: (1) the viability of the Fireman's Rule; (2) the constitutionality of the Rule; and (3) whether the Rule should be extended beyond the language of the *Buren* case to (a) one who is not an "owner or occupant" or (b) one who is not charged with negligence in "having created the condition necessitating the firemen's presence" but whose negligence or defective product causes a sudden, unusual, and unexpected exacerbation of the fire in progress (allegedly true in this case) resulting in injuries which would not have occurred otherwise.

■ The appellants claim that the Fireman's Rule is unconstitutional because it violates Section 14 of the Kentucky Constitution, which provides:

"All courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law...."

Section 14 protects against encroachment upon those "jural rights which had become well established before the adoption of the Constitution." *Kentucky Util. Co. v. Jack-*son County R.E. Coop. Corp., Ky., 438 S.W.2d 788, 790 (1968). In *Ludwig v. Johnson, et al.,* 243 Ky. 533, 49 S.W.2d 347 (1932), our Court recognized that a cause of action based on negligence is a jural right so protected. We held that a statute permitting the status of guest passenger to be utilized as a defense to a negligence claim in an automobile accident case was an encroachment on this constitutional right. However, *Ludwig v. Johnson* is not applicable to the present case because the rule declaring that a fireman's status is a defense available to landowners and occupiers is a common law rule of longstanding preexisting our 1891 Constitution. Although the appellants argue the rule is unreasonable, their brief concedes that "[t]he Firemen's Rule had its inception in the traditional 19th century tort concepts."

At its inception, firemen who entered the premises in discharge of their duties were designated "licensees" to whom landowners or occupiers owed no duty except to warn of known concealed dangers and to refrain from inflicting willful or intentional injury. *See Prosser on Torts,* § 61, at 397 (4th ed. 1971); 1 J. Dooley, *Modern Tort Law,* § 19.07, at 454–58 (1982).

In addressing the landowner/licensee classifications, we said in *Buren v. Midwest Industries, Inc., supra,* that "... Justice is not aided by appending an inappropriate label and then visiting consequences which flow from a status artificially imputed," and "[We] are inclined to agree that he (the fireman) is neither a licensee nor invitee, but occupies a status sui generis."

We further said:

"A better basis of non-liability is that 'it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement,' the precise risk which the public pays him to undertake."

Thus we have decided that there is a public policy reason for the continued via-

---

**1.** New negligence that is subsequent conduct after the fireman arrives on the premises.

bility of an ancient, longstanding rule of law.

■ In *Parker v. Redden*, Ky., 421 S.W.2d 586 (1967), we recognized that it is a misnomer to apply the term "assumption of the risk" to the negligence, if any, that attaches to voluntarily placing oneself in a dangerous situation. If one negligently encounters a known danger, such conduct may or may not be contributory negligence depending on whether it was reasonable to do so under the circumstances, but the term "assumption of the risk" is inapplicable. The pure or strict assumption of the risk doctrine is not involved except in a contractual or employment situation wherein "the risk assumed was of negligent acts already committed by the person against whom recovery was sought." 421 S.W.2d at 592.

As stated in *Court v. Grzelinski*, 72 Ill.2d 141, 19 Ill.Dec. 617, 620, 379 N.E.2d 281, 284 (Ill.1978):

"In negligence actions, assumption of risk is confined to those situations involving persons who have a contractual or employment relationship with the defendant."

■ The fireman who comes to put out the fire has no contract to fight the fire except with the government agency which employs him. Nevertheless, the fireman employed by a municipality is paid from the public treasury from funds which are in some measure derived from the levy of taxes upon the owners of the property he is employed to protect. As stated in *Buren v. Midwest Industries, Inc., supra,* he occupies a status "sui generis." There are, therefore, sound policy reasons to continue the fireman's special status, foreclosing him from asserting a claim, but only as to those who are the intended beneficiaries of the policy, to-wit: the owners and occupiers of the property he is employed to protect.

At this point it is important to note the limitations applicable to the Fireman's Rule even as to those whom protection is otherwise extended. As stated in *Buren v. Midwest Industries, Inc., supra:*

"[A] fireman is entitled to assume compliance with respect to unguarded eleva-

tor shafts, open stair wells, exposed wires, and similar hazards to a reasonably safe access to and use of the premises in the manner in which they are ordinarily expected to be used ... [E.g.] the presence of explosives may predicate liability on the basis either of an unusual hidden hazard or of continuing 'active' negligence, as the particular facts warrant." 380 S.W.2d at 98.

Thus the present-day basis for continuing the Fireman's Rule does not relate to his now rejected status as a mere licensee. Its present viability relates to the peculiar status of the fireman as a part of fire prevention whose existence and presence at the fire is needed in the public interest, limited to those who can reasonably expect to benefit from his presence. As such, the Fireman's Rule is still needed to protect those owners and occupiers whose negligence initiates a fire.

Thus, for reasons of public policy, our rule is that firemen are required to assume the ordinary risks of their employment, a dangerous occupation, to the extent necessary to serve the public purpose of fire control, and this means providing the Fireman's Rule as a defense for those who are the owners or occupiers of the property he is employed to protect.

As to the appellee, Federspiel, who occupies the premises, the Fireman's Rule is clearly a viable defense.

■ Next, as to Kamarei, the owner of the automobile which struck the gasoline dispenser, the same reasons that would militate in favor of permitting a person in possession or control of the premises to assert the Fireman's Rule as a defense, would also apply to Kamarei. The liability claim against him is premised on his part in initiating the fire. He is among the people that fire protection is intended to benefit.

Sun Oil and Sunmark Industries, Inc. have an ownership interest in the property. As owners, they are entitled to the continued viability of the Fireman's Rule as announced in *Buren v. Midwest Industries, Inc., supra.*

■ It has been suggested that even though Sun Oil and Sunmark are entitled to protection as owners from liability to firemen injured in fighting a fire caused by their negligence, they are not entitled to any protection for negligence in their capacity as a builder for negligence which caused the fire. We reject this suggestion because the policy behind the "Fireman's Rule" is to protect an owner or occupant from liability to a fireman because of the negligence of the owner or occupant which causes a fire. It matters not that the negligence complained of occurred immediately before the fire or remotely during the time when the owner was constructing the building. In either case the principle is the same. The risk of harm to the fireman is the very risk which the fireman was employed to undertake.

■ Finally, as to Tokheim, Inc., whose liability, if any, is premised on defective manufacture of the gasoline dispenser, alleged to have turned a low-grade, non-threatening fire into a holocaust, clearly the Fireman's Rule would have no application to this claim if it can be substantiated. Tokheim, Inc. is neither an owner nor occupant of the premises.

For the reasons stated in this opinion, the opinion of the Court of Appeals and the trial court's summary judgment are affirmed as to the appellees, Federspiel and Kamarei, Sunmark Industries, Inc., Sun Oil of Pennsylvania, and is reversed as to the appellee Tokheim, Inc., and remanded to the trial court for further proceedings consistent with this opinion.

GANT, VANCE and WHITE, JJ., concur.

STEPHENSON, J., concurs in part/dissents in part by separate attached opinion.

WINTERSHEIMER, J., dissents.

LEIBSON, J., dissents by separate attached opinion in which STEPHENS, C.J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

This case shatters our rule of longstanding that a "petition for rehearing will be denied where nothing is presented that was not considered at the original hearing." Bertelsman & Philipps, Ky. Prac., 4th ed., Civil Rule 76.32, p. 621. Petitioners, Sunmark Industries, Inc. and Sun Oil of Pennsylvania ("Sunmark") did not, and could not, point to any reason to grant their petition for rehearing consistent with our rule. On the contrary, Sunmark claims only that our opinion "is incorrect" and "that the Court should rectify that portion of its opinion which is erroneous." In case after case we have held that the original opinion will not be disturbed simply because the petitioner believes that the issue has been erroneously decided.

All matters pertaining to Sunmark's claim of error were considered and addressed in the original briefs, in oral argument, in conference, and in our opinion. The decision to withdraw that opinion transforms a petition for rehearing into a motion for reconsideration. This abandons longstanding precedent and policy in our Court. Henceforth, we can expect a petition for rehearing in every case. Almost without exception the losing party believes the case has been erroneously decided.

As one might expect when policy is changed in midstream, our new decision creates a potentially serious injustice for another party, Tokheim, Inc. The grounds for deciding that the Fireman's Rule enunciated in *Buren v. Midwest Industries, Inc.,* Ky., 380 S.W.2d 96 (1964) did not extend to Sunmark were substantially the same as the grounds for deciding that the Fireman's Rule did not apply to Tokheim, Inc. We have now decided to punish Tokheim, Inc. for abiding by our decision and refraining from a groundless petition for rehearing by trapping this party into the position of the only remaining defendant in the case. No doubt Tokheim would have also filed a petition for rehearing had it occurred to its attorney that there was any likelihood that this Court would change its mind, as it has done, even though nothing is presented that was not considered originally.

The "guts" of our original opinion, now withdrawn, was its interpretation of how *Buren* should be applied to the present fact situation. We held that the Fireman's Rule did not extend "protection to Sun Oil in its capacity as a builder or designer in the original construction or installation of the pumping station," or "to Tokheim, Inc., whose liability, if any, is premised on defective manufacturer of a gasoline dispenser." In both instances liability is predicated on the decision, squarely faced, that negligence in the original design or construction of the pump and pumping station should not be granted immunity.

The reasoning behind our decision was: "This [the Fireman's Rule] is a rule of necessity. It does not provide a defense to negligent actors beyond the parameters of those who need to be, and have a right to expect to be, protected in the interest of fire protection."

We stated that the fireman "has made no contract agreeing not to sue those who may negligently injure him"; that the rule is strictly limited "as a defense for those who are in possession and control of the premises, and to others similarly situated who would be expected to call on the fire department for protection when the fire initiates"; "to those who are indeed the 'object of [the] fire prevention and control' [quoting *Buren*] which brings him to the scene."

Sunmark is an absentee commercial landowner as to whom the reasons behind the Fireman's Rule are not viable. No wrongdoer should be granted immunity unless there are underlying reasons of public policy so compelling as to require relieving the wrongdoer from responsibility for the wrong. The reason behind the Fireman's Rule is that public policy must encourage a owner in possession, or an occupier or user of the premises, or others in the vicinity of the fire, to call the fire department, uninhibited by any concern for potential liability to a fireman injured by negligence in connection with the cause or the spread of the fire. The reason behind the rule is completely lost where Sunmark is concerned. Essentially, in our original opinion, we held that the Fireman's Rule does not protect a wrongdoer where the reason for the rule does not apply.

Nineteenth century mechanical jurisprudence was exposed, discredited and discarded by the vast majority of legal scholars and leading jurists years ago, starting with Oliver Wendell Holmes and Roscoe Pound. *See for example*, Roscoe Pound, *Mechanical Jurisprudence*, 8 Colum.L.Rev. 605, 620 (1908):

"The nadir of mechanical jurisprudence is reached when conceptions are used, not as premises from which to reason, but as ultimate solutions. So used, they cease to be conceptions and become empty words."

There is a difference between applying the law judiciously and conservatively and applying the law in a harsh and regressive manner. We lose sight of this difference in our new opinion.

The new opinion has adopted the rationale of the former opinion, which is that the protection of the Fireman's Rule is not absolute but dependent on the relationship of the defendant to the fire. But the new opinion has abandoned the results that follow logically from that reasoning. If Sunmark were an owner in possession, or even an owner temporarily absent, there would be reason to consider extending the rule of non-liability to it. But it is none of these. It simply built the gas station and then turned the premises over to a lessee. Initially, after construction and for about seven years, it utilized an intermediary, South Central Oil Company. Its primary interest in the property consisted of seeing that the gas station owner used its products.

As to both Tokheim, Inc. and Sunmark, this is essentially a products liability case based on defective design of the pump and the pumping station upon which it sets. The fact that the pumping station is attached to the realty is a distinction without a difference. As stated in *Court v. Grzelinski*, 72 Ill.2d 141, 19 Ill.Dec. 617, 620, 379 N.E.2d 281, 284 (Ill.1978):

"The rule cannot be expanded to a free-floating proposition that a fireman cannot recover for injuries resulting from

risks inherently involved in fire fighting.... In negligence actions, assumption of risk is confined to those situations involving persons who have a contractual or employment relationship with the defendant.... [A]ssumption of risk is an affirmative defense interposed against a plaintiff who voluntarily exposes himself to a specific, known risk, not a preclusion of recovery against a plaintiff whose occupation inherently involves general risks of injury."

Tokheim, Inc. can complain, with much justification, that our new opinion applies the Fireman's Rule so as to deny it, as the manufacturer of the gasoline dispenser, equal protection of the law. If its dispenser was defective it may be liable, but Sunmark, charged with negligence in its capacity as a builder or designer of the pumping station, is immune. Arguably, this is an arbitrary and unreasonable classification in violation of the Kentucky Constitution § 59. *Tabler v. Wallace*, Ky., 704 S.W.2d 179 (1985) and *In re Beverly Hills Fire Litigation*, Ky., 672 S.W.2d 922 (1984).

STEPHENSON, Justice, concurring in part/dissenting in part.

I am of the opinion the rationale of *Buren* clearly applies to Tokheim, Inc., and the protection of the "Fireman's Rule" should be extended to that party.