RENDERED: OCTOBER 24, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0062-DG

WOOSTER MOTOR WAYS, INC.; JAMES                          APPELLANTS
BAUMHOWER; EC DELIVERY, LLC;
KENTUCKY FARM BUREAU MUTUAL
INSURANCE COMPANY; AND TEDDY
SEERY


                    ON REVIEW FROM COURT OF APPEALS
V.                          NO. 2021-CA-01304
            HENRY CIRCUIT COURT NO. 18-CI-00221


MICHAEL GONTERMAN; JEANA                                   APPELLEES
GONTERMAN; AND KENTUCKY SELF-
INSURED AUTO PROGRAM-STATE RISK &
INSURANCE SERVICES DIVISION


**OPINION OF THE COURT BY CHIEF JUSTICE VANMETER**

**<u>AFFIRMING</u>**

The Firefighter's Rule ("the Rule") "is a 'common law rule of longstanding,' judicially created as a 'public policy' exception to the liability for negligence which might otherwise exist." *Sallee v. GTE South, Inc.*, 839 S.W.2d 277, 278 (Ky. 1992) (quoting *Hawkins v. Sunmark Indus., Inc.*, 727 S.W.2d 397, 399 (Ky. 1986)). Such rules are narrowly circumscribed "so as to protect no one from responsibility for the consequences of their wrongdoing except where protecting the public makes it essential to do so." *Id.* To effect this narrow circumscription, we allow the Rule to apply only upon satisfaction of three

prongs, which can be paraphrased as: (1) is the negligent party the owner or occupier of land where the injury occurred or is he similarly situated; (2) is the injured party a public employee at that location as part of their job to engage a specific risk; and (3) did the injury arise from that specific risk. Today we clarify that the risk denoted in the third prong does not extend to the independent and intervening negligence of parties otherwise unrelated to that risk. As applied here, a police officer is injured by the independent negligence of another while performing his duty as a public employee, the Rule will not act to bar suit against the negligent party.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the morning of April 25, 2018, John Crawford pulled his tanker truck onto the right shoulder of Interstate 71, just past a short bridge. While traveling on the interstate, Crawford noticed two dogs running loose on the bridge and, being an animal lover, he stopped his car with the intent to remove the dogs from the roadway. After pulling off, Crawford called 911 at 7:14 a.m. Crawford then exited his vehicle to begin corralling the canines.

Kentucky State Trooper Michael Gonterman was tasked with assisting Crawford. Gonterman arrived on the scene at 7:28 a.m., pulled onto the shoulder, and activated his cruiser's flashing lights.

Five to seven minutes after Gonterman's arrival, three vehicles approached the scene in the right lane of I-71. The first was a Nissan Altima driven by Kim Perkinson, followed by a box truck driven by James Baumhower for EC Delivery, and finally a tractor trailer driven by Teddy Seery for Wooster

2

Motor Ways. As the trio rounded a curve approximately a quarter mile from the bridge, each began to move into the left lane. As traffic approached the scene, cars were slowing considerably and Perkinson slowed her vehicle in response. Baumhower, for reasons disputed by the parties, was unable to slow his box truck commensurately and elected to swerve back into the right lane to avoid hitting Perkinson's car. Seery, traveling only 50 yards behind Baumhower when Baumhower moved into the right lane, was now presented with a similar problem: swerve into the right lane or hit Perkinson. Seery made the same choice as Baumhower and moved into the right lane. Seery was then unable to brake quickly enough to avoid the now braking Baumhower in the right lane and his tractor trailer collided with the back of Baumhower's box truck.

Just prior to the collision, Crawford and Gonterman had brought the dogs under control and were walking single file along the narrow emergency shoulder of the bridge. When Seery's tractor trailer hit the box truck, it caused the box truck to flip onto its side and slide down the roadway toward Crawford and Gonterman. When everything came to rest, Crawford was pinned between the box truck and the concrete barrier on the edge of the bridge. Crawford ultimately died from his injuries. Gonterman was knocked off the bridge, causing him to fall 30 feet. He was severely injured, suffering multiple broken bones, internal bleeding, a punctured lung, and a head injury. Gonterman survived but spent 38 days in the hospital and nearly 8 weeks in a wheelchair. The injuries continue to plague him.

Gonterman and his wife Jeana instituted the underlying action against Seery, Baumhower, their respective employers, Wooster and EC Delivery, Crawford's estate, and Crawford's employer, for various claims of negligence, as well as Kentucky Farm Bureau and Kentucky Self-Insured Auto Program for underinsured motorist ("UIM") claims. The defendants filed motions for summary judgment, arguing the Rule barred the Gontermans' claims because Gonterman was responding to a call for assistance when the injuries occurred. The trial court granted the motions, finding all three prongs of *Sallee* were met because (1) the defendants were similarly situated to other drivers whom Gonterman was sent to protect, (2) Gonterman was a public employee responding to a specific risk, and (3) the traffic accident occurred because of that risk. The Gontermans appealed.[1]

The Court of Appeals reversed the trial court, holding the defendants did not meet the first and third prongs of *Sallee*. The first prong was not met because they were not "others similarly situated" as they had no connection to the underlying road hazard, the loose dogs. The third prong was similarly unmet because the traffic accident was independent of the specific risk that Gonterman was sent to address. Wooster and the other defendants moved for discretionary review from this Court, and we granted their motion.

---

[1] The Gontermans did not appeal as to summary judgment in favor of the Estate of Crawford and his employer. They concede the Firefighter's Rule was correctly applied to those defendants.

## II. STANDARD OF REVIEW

Because this matter comes to us upon appeal of summary judgment and presents a solely legal question, our review is *de novo*. *Patton v. Bickford*, 529 S.W.3d 717, 723 (Ky. 2016); *Bluegrass Trust for Hist. Preservation v. Lexington Fayette Urb. Cnty. Gov't Planning Comm'n*, --- S.W.3d ---, 2024 WL 3929726, at *4 (Ky. Aug. 22, 2024).

## III. ANALYSIS

The Firefighter's Rule, in its most fundamental sense, stands for the proposition that "a person does not owe a duty of care to a professional rescuer for injury that was sustained by the very negligence that occasioned the rescuer's presence and that was within the scope of the hazards inherent in the rescuer's duties." *Ipsen v. Diamond Tree Experts, Inc.*, 466 P.3d 190, 199 (Utah 2020) (Lee, J., dissenting) (quoting *Fordham v. Oldroyd*, 171 P.3d 411, 415 (Utah 2007)). The rule has its origins in American common law through the case of *Gibson v. Leonard*, 32 N.E. 182 (Ill. 1892), wherein the Illinois Supreme Court determined that a police officer's claim against the owner of a building for an injury due to a defective elevator was barred because the landowner had not invited police to enter or use the elevator and so no duty was owed to keep the elevator in safe condition. This case, rooted in premises liability, laid the groundwork for the Rule. This root also explains, in part, the difficulty courts face in applying the rule beyond the premises liability framework.

Under this framework,

5

courts categorized professional rescuers as licensees to whom landowners owed only a duty not to injure "intentionally or by willful and wanton misconduct." A landowner's affirmative duties toward a professional rescuer were limited to warning the rescuer of hidden dangers known by the landlord and to carrying out her own activities with reasonable care. Absent any duty to make the premises safe for professional rescuers, the premises liability theory provided a basis to dismiss, for example, a firefighter's suit against a landowner who negligently caused the firefighter's injury.

Cristen C. Handley, *Back to the Basics: Restoring Fundamental Tort Principles by Abolishing the Professional-Rescuer's Doctrine*, 68 ARK. L. REV. 489, 492 (2015). Kentucky has deviated from this categorization by designating professional rescuers as "neither a licensee nor invitee, but . . . a status sui generis." *Buren v. Midwest Indus., Inc.*, 380 S.W.2d 96, 98 (Ky. 1964). Our predecessor court explained that "[a] better basis of non-liability is that 'it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement,' the precise risk which the public pays him to undertake[.]" *Id.* (quoting *Krauth v. Geller*, 157 A.2d 129, 273-74 (N.J. 1960)). The court also recognized that the result is the same as considering rescuers licensees. *Id.*

Kentucky's adoption of the Rule in *Buren*, a case involving injury from a property fire, flowed from a New Jersey case, *Krauth*, also involving the same kind of injury. In *Buren*, the court opined on the principle of assumed risk, noting that,

6

> the fireman is duty bound to assume the risk because he is being paid to do so does not make it any the less voluntary. Except for unusual hazards known to the property owner or occupant but unknown to him, the trained fire fighter is equally cognizant of and better able to evaluate the unpredictable dangers involved. When he arrives on the scene the field is his. The owner has no power to direct or control his actions. He may not order him to stay outside, or to stay off the roof, or to wear a gas mask, or to limit his actions to shooting water into the building from a safe position outside. To hold the owner responsible while denying him any right or discretion to say what the fireman shall or shall not do would not consist with what this court believes to be the fundamental law of liability by reason of negligence. Having bound his hands, the law cannot justly inflict upon him the consequences of what he might otherwise have been able to prevent.

*Buren*, 380 S.W.2d at 99. This principle provides the clearest rationale for the expansion of the firefighter's rule, such that it could be applied, as Appellants argue, to situations in public spaces, where no real property is involved.

The Rule as set forth in *Buren* was further clarified in *Hawkins*, 727 S.W.2d 397. There, a firefighter was injured while fighting a fire at a gas station. The Court was tasked, in part, with determining whether the Rule,

> should be extended beyond the language of the *Buren* case to (a) one who is not an "owner or occupant" or (b) one who is not charged with negligence in "having created the condition necessitating the firemen's presence" but whose negligence or defective product causes a sudden, unusual, and unexpected exacerbation of the fire in progress (allegedly true in this case) resulting in injuries which would not have occurred otherwise.

*Hawkins*, 727 S.W.2d at 399. The *Hawkins* Court moved away from the concept of "assumption of risk," but nevertheless found "sound policy reasons to continue the fireman's special status, foreclosing him from asserting a claim, but only as to those who are the intended beneficiaries of the policy, to-wit: the owners and occupiers of the property he is employed to protect." *Id.* at 400.

7

Accordingly, we found the firefighter's claim against any owners of the gas station to be barred, as well as against the driver whose negligence caused the fire. However, as to the manufacturer of an allegedly defective gasoline dispenser, we allowed the suit to proceed as it was "neither an owner nor occupant of the premises." *Id.* at 401. Thus, this Court made the first narrowing of the Rule (or, perhaps a more correct way to describe our holding as maintaining the status quo), a process that subsequent opinions would continue.

Of our very limited Firefighter's Rule jurisprudence, the next case, *Sallee* is arguably the most important and approaches most closely the factual situation we address today. In *Sallee,* a paramedic removing an assault victim from a home in Lexington tripped over an inadequately filled trench near the home and severely twisted his ankle. 839 S.W.2d at 278. The paramedic's claim against the construction workers who dug and filled the trench was initially deemed to be barred by the Rule, but we disagreed, holding that public policy exceptions to liability, like the Rule, are to be narrowly circumscribed, "so as to protect no one from responsibility for the consequences of their wrongdoing except where protecting the public makes it essential to do so." *Id.* at 277-78. We set forth a three-prong test for the application of the Rule:

> 1) The purpose of the policy is to encourage owners and occupiers, and others similarly situated, in a situation where it is important to themselves and to the general public to call a public protection agency, and to do so free from any concern that by so doing they may encounter legal liability based on their negligence in creating the risk.

8

2) The policy bars public employees (firefighters, police officers, and the like) who, as an incident of their occupation, come to a given location to engage a specific risk; and

3) The policy extends only to that risk.

*Id.* at 279. In allowing the suit to proceed, we acknowledged "that the Firefighter's Rule is not restricted to 'owners or occupiers,' but covers as well others who need to be protected so they will call upon the appropriate public protection agency." *Id.* at 279-80. But the construction company was not part of that class of "others similarly situated", nor was the trench a risk "part of the emergency being attended." *Id.* at 279. In so holding, we recognized that the mere fact that a rescuer is engaged in their duties when an injury occurs to him does not insulate a would-be tortfeasor from all liability regardless of circumstance.

This Court's most recent holding on the Rule, *Norfolk Southern Railway Co. v. Johnson,* 554 S.W.3d 315 (Ky. 2018), is largely an application of the *Sallee* factors to a traditional, premises-liability-based application of the Rule. We determined the Rule applied to bar suit against the owner of the land whereon a police officer was injured after falling down an embankment during a foot pursuit. Our analysis of the third prong is most relevant here. In *Norfolk*, the officer argued that the risk created by the embankment of a different kind from the specific risk she was called to address. 554 S.W.3d at 318. We disagreed, holding the risk of falling down the embankment was part and parcel of the risk of apprehending a fleeing suspect. *Id.* at 318-19. Although the analysis was novel, the result was entirely in line with *Buren* and

9

the concept of the Rule as being primarily designed to protect landowners needing professional assistance at their properties.

Against this sparse, but instructive, line of precedent, we analyze the injuries to Trooper Gonterman. Pursuant to *Sallee*, we look to the three prongs to determine the Rule's applicability. No party disputes that the second prong is met—a proposition with which we agree—so we will not expend undue ink on that element. We will therefore focus on the first and third prongs.

Regarding the first prong, little dispute exists that the truck drivers did not own or occupy I-71, except in the most abstract sense, so that route to satisfy the prong is foreclosed. For the Rule to apply, Appellants must first show that they are "others similarly situated" to those the Rule was intended to benefit. The overall animating purpose behind the Rule is to encourage individuals to request professional assistance by barring litigation against help-seekers. As the history of the Rule illustrates, this purpose was initially conceived as covering property owners or occupiers who may negligently start a fire or some other emergency. Because these emergencies have the potential to cause injury to the negligent party as well as non-negligent others, sound public policy dictated some sort of insulation for the person who caused the emergency which led to a rescuer's injury when that person called for help. In the premises liability framework, "others similarly situated" would easily be understood as other non-owners, non-occupiers present in a property who request assistance. Broadly speaking, the important elements are some direct

10

connection to the hazard or the site of the hazard and/or the act of requesting assistance.

We do not believe Seery or Baumhower fall into that class of "others similarly situated." At the outset, we note that neither Seery nor Baumhower called 911 to report a hazard that day, so the primary rationale behind the Rule is already defeated. Beyond that, the truck drivers had no other connection to the hazard—the loose dogs—other than the fact that they were driving along I-71 that morning. Seery and Gonterman were not part of the class of people whom the Rule was created to protect. Accordingly, the first prong is not satisfied.

As to the third prong, *Sallee* offers useful guidance. In describing the limits of Rule-applicable risk, we offered this hypothetical: "The Firefighter's Rule would insulate the persons involved in [a] drunk driving incident, but not another driver who negligently injured the police officer directing traffic. The hypothetical police officer, and the present movant, assume the risk that occasion their presence, but not a further risk from a different source." *Sallee*, 839 S.W.2d at 279. Although dicta, our hypothetical is nevertheless "persuasive or entitled to respect according to the reasoning and application or whether it was intended to lay down a controlling principle." *Cawood v. Hensley*, 247 S.W.2d 27, 29 (Ky. 1952). We hold today that the hypothetical in *Sallee* is representative of the principal that the Rule does not extend to injuries caused by independent or intervening acts of negligence.

11

The negligence that injured Trooper Gonterman was just such an instance of independent negligence. Although the overall situation that gave rise to the accident did flow from corralling the dogs, no relationship existed between the dog-based hazard and the collision between the trucks. The record suggests that both Seery and Baumhower were operating their vehicles in a negligent manner that led to the crash independent of the dogs or of Gonterman and Crawford. Both truck drivers were travelling too fast and following too close to the respective vehicle in front of them. Any sudden slowdown of traffic likely would have led to an accident in that situation, and that the slowdown was caused by the presence of Trooper Gonterman was largely coincidental. Indeed, in the 5-7 minutes of increasing rush hour traffic that passed Gonterman and Crawford as they actively restrained the dogs, no similar accident occurred. Only when Seery and Baumhower approached the scene did a tragic accident occur.

This result is in line with the jurisprudence of our fellow states. In *Harris-Fields v. Syze*, 600 N.W.2d 611 (Mich. 1999), a state trooper was struck and killed by another driver as he stood at the doorway of a pulled-over car. The Michigan Supreme Court held, "where the officer's injury results from the subsequent negligence of the defendant, the rule does not bar recovery", *Id.* at 615, and "where the allegedly negligent conduct of the defendant did not result in the officer's presence at the scene of the injury the fireman's rule does not apply." *Id.* at 616. Similarly, in *Benefiel v. Walker*, 422 S.E.2d 773 (Va. 1992), the Virginia Supreme Court reached a similar conclusion in assessing the Rule

12

as applied to an officer struck by another driver while he sat in his cruiser writing a ticket. That court noted the "negligence was an independent act of negligence of a third party, unrelated to the reason Benefiel stopped the motorist" and found the Rule not to apply. *Id.* at 777; *see, e.g., Aetna Cas. & Sur. Co. v. Vierra*, 619 A.2d 436, 440 (R.I. 1993) (noting the harshness of the rule and other courts' attempts to narrow it and finding "the police officer's rule does not apply to Mello, the independent tortfeasor who injured defendant in this case" by striking him as he directed traffic after a prior accident); *Wietcha v. Peoronard*, 510 A.2d 19, 21 (N.J. 1986) (holding that the Rule does not insulate "independent and intervening negligent acts that injure" a police officer to allow suit against a vehicle that struck the officer as the officer tended to a prior multi-vehicle accident); *Beaupre v. Pierce Cnty*, 166 P.3d 712, 717 (Wash. 2007) (holding the Rule did not apply "to negligent or intentional acts of intervening parties not responsible for bringing the rescuer to the scene" where officer was struck by another officer's car during a foot pursuit); *Gaither v. Metro. Atlanta RTA*, 510 S.E.2d 342, 345 (Ga. Ct. App. 1998) (holding Rule not to apply because officer was in the street responding to negligence separate from the negligence of the bus driver who struck him as the Rule "does not include subsequent or extrinsic acts of negligence other than the initial reason for the [professional's] presence" (Internal quotation marks omitted)); *Schreiber v. Cherry Hill Constr. Co.*, 660 A.2d 970 (Md. Ct. App. 1995) (holding Rule not to apply to driver who lost control of vehicle attempting to avoid an accident

13

scene because "it is evident that if the act of negligence that causes the injury is something other than what necessitated the presence of the safety officer").

## IV.   CONCLUSION

Because the Firefighter's Rule is a public policy exception to liability that effectively bars the courthouse doors for firefighters, police officers, and others who are dutybound to protect the general public, we construe the Rule narrowly.  Today we hold explicitly that the Rule does not apply to independent or intervening acts of negligence that cause a rescuer to be injured as he or she is engaged in his or her professional duty.  Because the negligence that injured Trooper Gonterman was independent of the hazard he was dispatched to manage, the Rule does not bar suit against Seery, Baumhower, and their respective employers.  To the extent that Gonterman's UIM action flows from that independent negligence, suit may similarly be continued against the UIM defendants.

For the forgoing reasons, the Court of Appeals is affirmed, and this case is remanded to the Henry Circuit Court for further proceedings consistent with this Opinion.

All sitting.  All concur.

14

COUNSEL FOR APPELLANTS,
WOOSTER MOTOR WAYS, INC.
AND TERRY SEERY:

Mary Katherine Brashear
Christina R. L. Norris
Goldberg Simpson, LLC


COUNSEL FOR APPELLANTS,
JAMES BAUMHOWER AND
EC DELIVERY, LLC:

Andrew-John Ralph Bokeno
Lynsie Gaddis Rust
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP

COUNSEL FOR APPELLANT,
KENTUCKY FARM BUREAU MUTUAL
INSURANCE COMPANY:

James M. Crawford
Jake A. Thompson
Crawford & Baxter, P.S.C.

COUNSEL FOR APPELLEES,
MICHAEL GONTERMAN AND
JEANA GONTERMAN:

Edward Malone Bourne, Jr.
Courtney French Bourne
Bourne Law Office, PSC

Chad O. Propst
Marshall J. Rowland
Liz J. Shepherd
Tyler S. Thompson
Dolt Thompson Shepherd & Conway P.S.C.

COUNSEL FOR APPELLEE,
KENTUCKY SELF-INSURED
AUTO PROGRAM- STATE RISK
& INSURANCE SERVICES DIVISION:

James Garvin Womack
Embry Merritt Womack Nance, PLLC

15

COUNSEL FOR AMICUS,
KENTUCKY DEFENSE COUNSEL, INC.:

Olivia F. Amlung
Adams Law PLLC

COUNSEL FOR AMICUS,
KENTUCKY JUSTICE ASSOCIATION:

Kevin Crosby Burke
Burke Neal PLLC

COUNSEL FOR AMICUS,
KENTUCKY STATE LODGE
FRATERNAL ORDER OF POLICE:

Aaron A. VanderLaan
Arnzen Storm & Turner P.S.C.