## DENNY ET AL. *v.* BRADY, RECEIVER.

[No. 25,591.   Filed October 25, 1928.   Rehearing denied April 19, 1929.]

*Walterhouse & Miller, Richard L. Ewbank* and *George Koons,* for appellants.

*J. A. VanOsdol, Warner & Warner, Diven, Diven & Campbell, Miller, Dailey & Thompson* and *Thompson, Rabb & Stephenson,* for appellee.

*James M. Barrett, James M. Barrett, Jr.,* and *Phil M. McNagny, Amici Curiae.*

MARTIN, J.—Appellee, the receiver of the Union Traction Company of Indiana, who operates street cars and buses in the city of Muncie, sued appellants, some of whom also operate buses and some of whom are officials of the city, to enjoin them from operating buses and from interfering with appellee's operation of buses, and this appeal is from a temporary injunction granted by

the trial court, granting the relief prayed until final hearing and judgment.

The appellant bus operators claim the right to operate under and solely by reason of an ordinance of the city of Muncie and a certificate of convenience and necessity issued by the city thereunder, and appellee claims the right to operate under and solely by reason of a certificate of convenience and necessity issued by the Public Service Commission of Indiana.

The appellant bus operators contend that Acts 1925, ch. 122, §1, §10174 Burns 1926, extending the corporate power of street, interurban and steam railroad corporations to include the power to acquire, own and operate motor vehicles for the transportation for hire of passengers and freight, does not empower the Union Traction Company of Indiana or its receiver, the appellee herein, to operate buses unless and until the company's articles of incorporation have been amended to include such broader scope of business authorized by that act; that such articles of incorporation have not been so amended and that therefore appellee has no right or power to operate buses, and, as a result thereof, has no right to sue for an injunction prohibiting appellants' operation. Section 10174, *supra*, does not merely grant the privilege to the class of companies named to incorporate for, or to amend their present charters to include, such added purpose, but actually construes the powers already granted to all such companies to include that purpose. Such added power does not change or affect the fundamental purpose of the corporation, but it is auxiliary thereto. The Legislature has the power to amend the act under which a company was incorporated, *City of Indianapolis* v. *Navin* (1897), 151 Ind. 139, 143, 47 N. E. 525, 51 N. E. 80, 41 L. R. A. 337, and the exercise of

such reserved power of the state does not offend any constitutional rights, *New York, etc., R. Co.* v. *Bristol* (1894), 151 U. S. 556, 567, 14 Sup. Ct. 437, 38 L. Ed. 269. No condition of acceptance is imposed by the act, but if acceptance were necessary, it would be implied from the exercise of the powers granted. *Gibbs* v. *Consolidated Gas Co.* (1889), 130 U. S. 396, 9 Sup. Ct. 553, 32 L. Ed. 979. It follows that appellee is empowered by statute to operate motor vehicles for the transportation for hire of passengers and freight..

The appellant city officials contend that the ordinance in question is purely one for the regulation of traffic and control over streets under the police power. Such an ordinance, if it does not prohibit or unreasonably interfere with the operation of utilities which have received certificates of convenience and necessity from the state Public Service Commission, and is otherwise reasonable, is valid, *Stuck* v. *Town of Beech Grove* (1928), *post* 66, 163 N. E. 483, and if valid, appellee, who has not complied with its. terms, would not be entitled to operate buses or to restrain others from interfering with the operation thereof. But, an examination of the ordinance shows that it is more than a regulatory ordinance under the police power. It regulates service, fixes rates and provides the common council with the power to control competition.[1] These

---

[1] The record shows that the city of Muncie has from 1916 had in force ordinances for the control and licensing of buses. The ordinance, enacted in 1921, as amended in 1923, and as again amended in 1925, consists of 19 sections. Section 6 (as amended in 1925) is as follows:

"Section 6. No jitney bus, except as hereinafter provided, shall be operated upon any public street, avenue or other highway of the city of Muncie, until after there shall have been obtained from the Common Council of said city a certificate declaring that public convenience and necessity require such operation, and no certificate shall be issued except as hereinafter provided until after a public hearing and consideration of the service, if any, rendered in the territory of the proposed jitney bus operation by other jitney buses or other public utilities. The determination of the question of public convenience and

are powers which were given by statute to the Public Service Commission, and, unless the city of Muncie is within that class of cities from which the grant of power to the commission over buses as common carriers was

necessity for competing service shall be subject to the approval and review by the Circuit and Superior Courts as provided by law. Such Common Council is empowered to adopt rules and regulations to govern applications for certificates of convenience and necessity and hearings thereon; provided, that the owner of any jitney bus service which has been operated over a fixed route within the city limits of the City of Muncie with a substantially regular schedule, upon the highways of the city for a period of ninety days prior to the 25th day of November 1925, shall be entitled to a certificate of convenience and necessity and may continue such operation upon such route, or where such route conflicts with section 9 of this ordinance upon a route substantially the same as such route operated upon during the ninety-day period, not inconsistent with said section 9 of this ordinance, and a certificate of public convenience and necessity shall be issued accordingly."

The other sections of the ordinance cover the following subjects:

Secs. 1-2 provide that the ordinance applies to the operation of the "jitney bus," and defines that term.

Sec. 3 provides what applications for license shall show, including name and residence of applicant, age and experience of proposed drivers, description and state license number of motor vehicles, description of routes to be traversed, date on which certificate of convenience and necessity was granted, schedule of trips covering "at least two round trips hourly throughout fourteen consecutive hours each day." This section also provides for an annual license fee for each route of $500 (except where less than three buses are operated, the fee is $250 for first bus and $150 for second).

Sec. 4 provides for a bond, indemnity undertaking or policy of insurance to protect anyone damaged by the operation of the bus and specifying the amounts of liability.

Sec. 5 provides for the issuance of a license.

Sec. 6½ provides for reserve auxiliary buses.

Sec. 7 provides for the return of the unaccrued part of license fees.

Sec. 8 prohibits driving by persons not 21 years of age, experienced and careful.

Sec. 9 prohibits bus routes on certain streets (in 1921 ordinance, on streets with street-car tracks).

Sec. 10 prohibits passengers riding outside of bus.

Sec. 11 relates to keeping buses in repair, and clean and sanitary condition, and provides that they "shall be operated each day substantially on the schedule stated in the application for a license therefor."

Sec. 12 fixes the rate of fare at five cents, and makes certain provisions regarding transfers.

Sec. 13 requires bus to be stopped before crossing railroad.

Sec. 14 requires report of articles left in bus.

Sec. 15 makes conviction of two violations of ordinance or traffic laws ground for revocation.

Sec. 16 fixes penalty at $5 to $100 for violation.

Secs. 17-18 provide for taking effect of ordinance and repeal of conflicting ordinances.

excluded, the ordinance is void. This brings us to the principal question involved in the case.

All appellants contend that the record shows that the city of Muncie regulated buses as common carriers therein prior to the passage of the Moorhead Amendment (Acts 1925, ch. 46, §§10164-10173 Burns 1926) to the Shively-Spencer Utility Law (Acts 1913, ch. 76, §§12672-12802 Burns 1926), and that §5 of the Moorhead Amendment withheld from the Public Service Commission the power to regulate buses operating as common carriers wholly within such cities.

Acts 1925, ch. 46, §5, §10168 Burns 1926, contains the following proviso:

"That in any city or town of this state where motor transportation is now furnished under, or by color of, a contract, and in cities and towns contiguous thereto, the board of public works, common council or board of trustees, as the case may be, shall continue to supervise, control, permit, contract for and regulate such service, and to determine when, if at all, for public convenience and necessity competing service shall be established; but the determination of the question of public convenience and necessity for competing service, shall be subject to appeal to and review by the circuit or superior courts of the county upon complaint of any interested person filed within twenty days after such finding is made, and in the manner now provided by law for procedure in civil cases, including the right of appeal to the Supreme Court."

It was established by the evidence that buses were operated in Muncie under the authority of a city ordinance prior to the taking effect of this act, but appellants contend that the language used in the statute—"where motor transportation is now furnished under, or by color of contract"—does not include the city of Muncie, where buses were operated under licenses issued in pursuance of the terms of a city ordinance.

It is argued that the legislative history of Acts 1925, ch. 46, shows that the proviso above quoted from §5, was inserted on motion of a state senator from Lake County in order that the city of Hammond might be excepted from the operation of the act. "It appears that under a contract made by the city (of Hammond) in 1924, the Calumet Motor Coach Company is authorized for a period of twenty-five years, to run its coaches on any street of the city and to stop on any street in order to load or discharge passengers." *City of Hammond* v. *Schappi Bus Line* (1927), 275 U. S. 164, 48 Sup. Ct. 66, 72 L. Ed. 222. Regardless of what motive legislators have in passing legislation, the law, when enacted, applies to all situations which come within its terms. An attempt to enact special legislation applicable to one corporation alone and not embracing all which naturally belong to the, class would be ineffectual, and, such legislation would be void. *Rushville* v. *Hayes* (1904), 162 Ind. 193, 70 N. E. 134; *Rosencranz* v. *City of Evansville* (1924), 194 Ind. 499, 143 N. E. 593; *Fountain Park Co.* v. *Hensler* (1927), 199 Ind. 95, 155 N. E. 465, 50 A. L. R. 1518.

The Muncie bus ordinance, as it existed prior to 1925, contained provisions, compliance with which by operation thereunder bound the licensed operators to maintain a certain schedule of trips, to maintain liability insurance, etc. It is true that a mere license is defined to be a permit or privilege to do what otherwise would be unlawful, and is not a contract between the authority granting it and the person to whom it is granted, 37 C. J. 168, but the grant of a franchise, when accepted and acted upon, does create a contract, 26 C. J. 1022, since it creates obligations binding upon both the grantor and the grantee. *Dartmouth College* v. *Woodward* (1819), 4 Wheat. (U. S.) 518,

4 L. Ed. 629. In our opinion, the city's offer to permit the operators of buses to furnish service under stated terms and conditions and the acceptance of the offer, of the license and of all the terms of the ordinance or franchise, which bound the bus operators to give a definite service, constituted a furnishing of motor transportation "by color of a contract" within the terms of §5, *supra*.

It follows that the city of Muncie is within that class of cities from which the grant of power to the Public Service Commission over local buses as common carriers was excluded, and that the city ordinance under consideration is not invalid because it regulates service, fixes rates and controls competition, and that the lower court erred in granting the temporary injunction.

The judgment is reversed.

MYERS, C. J., absent.