DUNMAR INVESTMENT COMPANY, A NEBRASKA CORPORATION, ET AL., APPELLANTS, v. NORTHERN NATURAL GAS COMPANY, A CORPORATION, ET AL., APPELLEES.

176 N. W. 2d 4

Filed April 3, 1970.    No. 37359.

Foulks, Wall & Wintroub, for appellants.

Robert D. Mullin of Boland, Mullin & Walsh, Thomas N. Wright, F. Vinson Roach, William Strong, and James E. Fellows, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

NEWTON, J.

This action tests the right of defendant Northern Natural Gas Company to use the subsurface of the streets of the city of Omaha for pipes conveying steam and refrigerated water without first securing a franchise. Judgment for defendants was entered in the trial court. We affirm the judgment of the trial court.

For convenience, defendants Northern Natural Gas Company, Metropolitan Utilities District of Omaha, and the City of Omaha will be hereinafter respectively referred to as Northern, M.U.D., and City.

Northern constructed and operates a plant in downtown Omaha which supplies steam and chilled water to several buildings in the area for purposes of heating and air conditioning. The steam and chilled water are distributed by means of pipes or conduits lying under the surface of the streets and are returned to Northern's plant in the same manner. The plant is steam powered and natural gas is used to heat the boilers. All gas and water used in the system are purchased from M.U.D. All water used in the system, either as water or steam, after circulating through the system and through the buildings supplied, is returned and reused, the only exception being small unavoidable losses of steam and a minor loss due to the use of steam as a humidifier. Customers are charged for steam losses occurring on the customer's premises. Northern does not purport to be a public utility but reserves the privilege of accepting or rejecting customers and contracts with each on an individual basis. Its pipes or conduits were installed and are maintained under a permit issued by the City for which a charge is made annually.

Plaintiffs contend: (1) That Northern is engaged in the sale of steam and water in competition with M.U.D.; (2) that the operation is one requiring a franchise; and (3) that the permit is void as one permitting a purely private use of the streets.

The City is included in the Metropolitan Utilities District. Plaintiffs call attention to section 14-1011, R. R. S. 1943, which provides that if any portion of the district is supplied with water by any other entity, the M.U.D. board shall have power to fix water rates, regulate conditions of water service, and the conduct of the *water plant affording such supply*. Also cited is section 14-1009, R. R. S. 1943, which provides that no franchise or permit for the use of the streets for the laying of pipes in connection with a water plant designed for public or private service shall be granted except by the board of directors of M.U.D., and such

franchise or permit shall not be valid until approved by the electors of the district. The inapplicability of these statutes to the existing situation is apparent. Section 14-1008, R. R. S. 1943, gives M.U.D. general supervision and control of all matters pertaining to the water *supply* of the district. These statutes are clearly designed to give M.U.D. exclusive control of the water *supply* within the district. The term "water plant" refers to a "water plant affording such supply," in other words, to the production and supplying of water for consumption within the district. Northern obtains its water from M.U.D. It does not operate an independent plant producing water. Neither does it supply water for consumption by others. Any loss of water through escaping steam is negligible and not an inherent part of its operation which is aimed solely at the production of heat and cold by means of steam and chilled water. Plaintiffs' contention that Northern is engaged in the distribution and sale of gas and water is untenable.

It is urged that Northern's operation is one requiring a franchise which under the terms of section 14-811, R. R. S. 1943, cannot be issued without approval of the electors of the City. Such a franchise has not been obtained. As previously mentioned, Northern is operating under a permit issued in conformity with sections 28.20.010 to 28.20.140 of the Omaha municipal code. The pertinent portions of the ordinance provide:

"It shall be unlawful for any person, firm or corporation to use any space underneath, upon or above the surface of any street, alley, public way or other public grounds belonging to the city of Omaha, or to construct any structure thereunder or thereover, * * * without first obtaining a permit so to do from the Permits and Inspection Division of the Public Safety Department of the City of Omaha; * * *." § 28.20.010.

Section 28.20.070 requires the payment of annual compensation for the privilege of maintaining such structures.

Section 28.20.120 forbids interference with public works

and utilities except on consent of the city and lays down rules governing such action designed to prevent undue disruption of services rendered by public utilities.

Section 28.20.140 provides for the revocation of such permits on failure to comply with all requirements of the ordinance or if the space described in the permit shall be required for public use.

When is a franchise, as distinguished from a license or permit, required to authorize the use of a city's streets and alleys? A franchise is generally defined as a special privilege conferred by government upon an individual or corporation to do that which does not belong to the citizens of the country generally by common right. See, 36 Am. Jur. 2d, Franchises, § 1, p. 722; Omaha & C. B. St. Ry. Co. v. City of Omaha, 114 Neb. 483, 208 N. W. 123. The definition is sufficiently broad to include licenses and permits; yet, it is generally conceded that there is a distinction between a franchise and a permit or license. See, 36 Am. Jur. 2d, Franchises, § 2, p. 724; 37 C. J. S., Franchises, § 7, p. 149. The authorities concede that the distinction is of a somewhat nebulous and uncertain character without an exact line of demarcation. " 'A franchise is property, * * * a vested right, protected by the Constitution—while a license is a mere personal privilege, and, except in rare instances and under peculiar conditions, revocable.' " Shaw v. City of Asheville, 269 N. C. 90, 152 S. E. 2d 139. "It is true that a mere license is defined to be a permit or privilege to do what otherwise would be unlawful, and is not a contract between the authority granting it and the person to whom it is granted, * * * but the grant of a franchise, when accepted and acted upon, does create a contract, * * * since it creates obligations binding upon both the grantor and the grantee." Denny v. Brady, 201 Ind. 59, 163 N. E. 489. In Finney v. Estes, 130 Colo. 115, 273 P. 2d 638, it was held that a grant by a city council of a nonexclusive right to collect and dispose of garbage in the city, which was revocable by the

city at any time without payment of penalty, constituted a revocable "permit" and not a "franchise" which under the city charter could be granted only upon a vote of the tax-paying electors.

"What is the proper subject of a franchise depends largely upon existing conditions and the extent to which the public welfare is affected by the conduct of the business or enterprise in question. Rights exercised by a citizen may, when the public interest requires, be withdrawn by the state, so as in effect to make them franchises to all practical intents and purposes. Whenever any occupation or business is conducted in such a manner that the welfare of the people generally requires it to be regulated, modified, or restrained altogether, the legislature may affix to its exercise any conditions that legitimately tend to correct the evil; and thus, what was at one time a common right may be made the subject of a franchise." 36 Am. Jur. 2d, Franchises, § 3, p. 725. See, also, 37 C. J. S., Franchises, § 1d, p. 146.

The laying of pipes or conduits in the streets by Northern does not in any manner interfere with the public use of the streets and is in no sense a public nuisance. No contract has been entered into which gives or guarantees to Northern a property or contract right in the streets or the use of the streets. There is no attempt or necessity to regulate Northern's business or its rates in ways common to a franchise. Rather, it enjoys a mere personal privilege which must be exercised without detriment either to the public or to public utilities and which is revocable if it comes in conflict with the public interest. Northern's project serves only a very small segment of the people of Omaha and the public welfare is not affected by the conduct of its business. It is of far less interest to the people of Omaha than the conduct of other business enterprises patronized by the public generally. Under such circumstances, we cannot conceive of the public interest being sufficient to warrant an expensive and time-consuming election to pass

upon its desirability and propriety nor do we believe that this situation is one contemplated by the statutes cited by plaintiffs as requiring a franchise.

Finally, we believe that plaintiffs' contention that the permit issued to Northern is void as authorizing a private use of the public ways is without merit. We are not unmindful of the general rule that such private use cannot be granted without legislative authority, but it can be granted when such authority has been given, for example, in the case of privately owned and operated public utilities. Section 14-106, R. R. S. 1943, gives the city council authority to regulate the "laying down gas *and other pipes.*" (Emphasis supplied.) Section 14-107, R. R. S. 1943, provides that the council "may determine, fix and charge rentals for subways and conduits." The City has adopted and operates under a home rule charter. In Mollner v. City of Omaha, 169 Neb. 44, 98 N. W. 2d 33, this court said: " 'We hold that the city may by its charter under the Constitution provide for the exercise by the council of every power connected with the proper and efficient government of the municipality, including those powers so connected, which might lawfully be delegated to it by the legislature, without waiting for such delegation. It may provide for the exercise of power on subjects, connected with municipal concerns, which are also proper for state legislation, but upon which the state has not spoken, until it speaks.' " The authority of the City to act in the manner it has appears to be clear.

The judgment of the district court is affirmed.

AFFIRMED.

BOSLAUGH, J., not participating.