SYRACUSE RURAL FIRE DISTRICT, APPELLANT, V.
RONALD PLETAN, APPELLEE.
577 N.W. 2d 527

Filed April 3, 1998.   No. S-96-1175.

Susan I. Strong, of Plessman Law Offices, for appellant.

Douglas J. Peterson, of Knudsen, Berkheimer, Richardson, Endacott & Routh, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, and McCORMACK, JJ.

CONNOLLY, J.

The appellant, Syracuse Rural Fire District, owned a truck used in fighting grass fires called a grass rig. The grass rig became stalled and subsequently was destroyed by fire in a field owned by the appellee, Ronald Pletan, while the fire district was responding to a grass fire on Pletan's property. The fire district sued Pletan on two causes of action, breach of contract and negligence. The district court for Otoe County sustained Pletan's demurrer to the contract cause of action and sustained Pletan's motion for summary judgment on the tort cause of action. We conclude that the permit issued to Pletan was not a contract between Pletan and the fire district and that the "fireman's rule" applies to bar liability of Pletan to the fire district. Accordingly, we affirm.

## BACKGROUND

Pletan owned 160 acres of land located approximately 3 miles north of Syracuse, Nebraska. In 1989 or 1990, Pletan began clearing parcels of his land by burning different parcels on a yearly basis. As part of this controlled burning, Pletan rotated which parcels of land were burned each year so that each parcel would be burned once every 4 to 5 years. Under Neb. Rev. Stat. § 81-520.01 (Reissue 1996), there is a statewide ban on open burning in Nebraska. However, the fire chief of the local fire district may waive the open burning ban by issuing an open burning permit. Pletan had obtained permits in the past when he burned parcels of his property.

On April 6, 1995, Pletan obtained an open burning permit from Chuck Bjork of the fire district. The permit stated that it was being issued in accordance with § 81-520.01, and Pletan signed the permit following a line that read "Signature of person(s) assuming responsibility in event fire becomes out of control." Pletan intended to burn approximately 36 acres of grassland in one quadrant of his property. Pletan, along with three

other men and his son, began igniting the fire on his property the afternoon of April 6.

Before Pletan had finished igniting the 36-acre tract, the fire jumped a creek on Pletan's property into an area that Pletan had not intended to burn. At that point, Pletan and the people assisting him were unable to leave what they were doing, so they finished igniting the controlled fire before returning to the fire that had jumped across the creek.

Approximately 20 minutes later, Pletan and another man returned with a tractor and disc and a water truck to the area where the fire had jumped the creek. Pletan's intention was to disc around the area of the uncontrolled fire to stop it. However, while Pletan and his assistants had been finishing igniting the controlled fire, a neighbor had seen the fire burning out of control on the other side of the creek and had called the fire district. Thus, when Pletan and his assistants got closer to the area where the fire had jumped the creek they discovered that ambulances and firetrucks were already at the scene. Pletan described the situation as "out of control." Pletan assisted the firefighters by scouting for fires. In addition, one of Pletan's assistants used Pletan's tractor to help pull out of the field a firetruck that had become stuck in the mud. At that time, Pletan was unaware that another truck had become stalled in the field and had subsequently burned.

Before Pletan arrived at the scene of the uncontrolled fire, Tim Wurtele, a member of the fire district, arrived driving the grass rig. Wurtele entered Pletan's property in the grass rig on some mowed or shredded grass and observed that the fire was burning out of control. Wurtele then drove the grass rig over several areas of unmowed grass to get a better look at the fire. However, while attempting to drive up a hill in order to return to an area of mowed grass, the grass rig became stalled.

The record is not clear as to whether the grass rig sank into a wet spot on the ground and became stuck or there was a mechanical problem that caused the grass rig to stall. Wurtele's affidavit alleges the grass rig hit a soft spot and sank. But Pletan alleges in his deposition that when he viewed the burned truck a few weeks later, there were no ruts around the tires of the truck and the ground was dry. Pletan also testified that ruts from

other trucks that became stuck in soft spots could still be observed the next growing season. The deposition of Bruce Neemann, chief of the fire district, indicated that the grass rig may have had some transmission problems.

After the grass rig became stalled, a fire subsequently started underneath the truck. This fire was not connected with the fire out of control on Pletan's property, but apparently was ignited as a result of the truck's contact with the grass. Wurtele and the firefighters who were with him were able to fight the fire spreading from the truck with a portable water pump. However, the grass fire on Pletan's property soon made it necessary for Wurtele and the firefighters to abandon the grass rig, which was subsequently destroyed by the grass fire. Wurtele testified that he believes he could have prevented total destruction of the grass rig had he not been forced to abandon it.

Wurtele had no previous knowledge of soft spots on Pletan's property and was not forewarned that there were soft spots on the property that might be hazardous to the grass rig. Pletan testified that he subsequently discovered that there were some wet spots on his land, but since he does not farm the land, many times he does not know where they are. Pletan did know the location of several seasonal wet spots on his land but did not know of any in the area where the truck became stalled. Pletan also testified that he did not observe any mud on the day of the fire. Neemann testified that based on his investigation of the fire, he was of the opinion that no particular person was to blame for the incident and that it was a combination of factors that caused the fire.

The fire district brought this action against Pletan, seeking damages for the loss of its grass rig. For its first cause of action, the fire district alleged that the permit issued to Pletan was contractual in nature and that Pletan breached the contract by not assuming responsibility under the contract for the fire district's damages. For its second cause of action, the fire district alleged that the grass rig was damaged due to Pletan's failure to exercise reasonable care by failing to isolate the controlled fire on his property. The fire district also alleges in the second cause of action the failure to warn the district of known dangerous wet areas on his property that were unobservable to the firefighters.

The district court sustained Pletan's demurrer and dismissed the first cause of action. The district court then sustained Pletan's motion for summary judgment on the second cause of action. The fire district appeals.

## ASSIGNMENTS OF ERROR

The fire district assigns that the district court erred in (1) sustaining Pletan's demurrer to its first cause of action and (2) sustaining Pletan's motion for summary judgment.

## STANDARD OF REVIEW

When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *Galyen v. Balka*, 253 Neb. 270, 570 N.W.2d 519 (1997); *Giese v. Stice*, 252 Neb. 913, 567 N.W.2d 156 (1997).

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Darrah v. Bryan Memorial Hosp.*, 253 Neb. 710, 571 N.W.2d 783 (1998); *Ratigan v. K.D.L., Inc.*, 253 Neb. 640, 573 N.W.2d 739 (1998).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Battle Creek State Bank v. Preusker*, 253 Neb. 502, 571 N.W.2d 294 (1997); *Gans v. Parkview Plaza Partnership*, 253 Neb. 373, 571 N.W.2d 261 (1997).

## ANALYSIS

### DEMURRER TO CONTRACT CAUSE OF ACTION

The fire district contends that the permit issued to Pletan constituted a contract between Pletan and the fire district and that Pletan breached that contract by refusing to pay the fire district for the damage to its grass rig. The district court sustained

Pletan's demurrer and dismissed the fire district's contract cause of action. The court concluded that the inclusion of language in the permit providing that Pletan would assume responsibility if the fire burned out of control was intended to limit the liability of the issuing agency to a third party. The district court further concluded that the permit was a license that does not create contractual obligations between the agency granting it and the person receiving it. The fire district contends that the district court erred in its determination and argues that the permit contained mutual promises and, thus, should be considered to be a contract.

The permit in the instant case was issued pursuant to § 81-520.01, which states in part:

(1) There shall be a statewide open burning ban on all bonfires, outdoor rubbish fires, and fires for the purpose of clearing land.

(2) The fire chief of a local fire department or his or her designee may waive an open burning ban under subsection (1) of this section for an area under his or her jurisdiction by issuing an open burning permit to a person requesting permission to conduct open burning. The permit issued by the fire chief or his or her designee to a person desiring to conduct open burning shall be in writing, signed by the fire chief or his or her designee, and on a form prescribed by the State Fire Marshal.

The fire district cites *Dunmar Inv. Co. v. Northern Nat. Gas Co.*, 185 Neb. 400, 176 N.W.2d 4 (1970), for the proposition that the permit in the instant case is a contract. However, the section of *Dunmar Inv. Co.* the fire district points to deals with franchises and distinguishes a franchise from a license. In *Dunmar Inv. Co.*, we stated that a franchise is " ' "property, . . . a vested right, protected by the [U.S.] Constitution . . ." ' " and that, if accepted and acted on, a franchise does create a contract. *Id.* at 403, 176 N.W.2d at 6. However, in the instant case we are concerned with a license, not a franchise.

We have defined a license as " 'a means of regulating and taxing privileges and occupations and the use and disposal of property . . . .' " *Concerned Citizens v. Department of Environ. Contr.*, 244 Neb. 152, 157, 505 N.W.2d 654, 659 (1993). We

have also defined a license as " 'a permit or privilege to do what otherwise would be unlawful . . . .' " *Dunmar Inv. Co. v. Northern Nat. Gas Co.*, 185 Neb. at 403, 176 N.W.2d at 6. Thus, because a license is a mere personal privilege, a license " 'is not a contract between the authority granting it and the person to whom it is granted . . . .' " *Id.* Accord *Concerned Citizens v. Department of Environ. Contr., supra.* See, also, 53 C.J.S. Licenses § 3 (1987).

In the instant case, the permit was a license because it granted Pletan the privilege to conduct open burning, something that would otherwise be unlawful. As a license, the permit did not create contractual obligations between Pletan and the fire district. Accordingly, a cause of action for breach of contract did not exist between Pletan and the fire district, making a demurrer appropriate. The fire district's first assignment of error is without merit.

## SUMMARY JUDGMENT

Pletan contends that summary judgment was appropriate in this case because the "fireman's rule" applies to bar any liability Pletan would have to the fire district for negligently causing the fire. Pletan further argues that exceptions to the fireman's rule for willful or wanton negligence or a failure to warn of hidden dangers do not apply. The fire district contends that summary judgment was not appropriate because there are genuine issues of fact as to whether Pletan was negligent in allowing the fire to burn out of control. The fire district further argues that the fireman's rule does not apply in this case. In particular, the fire district argues that the rationale behind the rule does not apply in the instant case because Pletan intentionally set out to burn a portion of his property under a permit, because an out of control fire was foreseeable, and because Pletan was allegedly negligent in allowing the fire to burn out of control.

The fireman's rule negates liability to firefighters by one whose negligence causes or contributes to a fire which in turn causes injury to a firefighter. *Buchanan v. Prickett & Son, Inc.*, 203 Neb. 684, 279 N.W.2d 855 (1979). The rule has been stated as follows:

"[A] fireman or individual fighting a fire on the premises of an owner or occupant is a bare licensee to whom the owner or occupant owes no greater duty than to refrain from injuring him by willful or wanton negligence or a designed injury, except in certain cases where there may be a duty to warn of hidden danger or peril known to the owner or occupant but unknown to or unobservable by the fireman in the exercise of ordinary care."

*Lave v. Neumann*, 211 Neb. 97, 99-100, 317 N.W.2d 779, 781 (1982). Accord, *Buchanan v. Prickett & Son, Inc., supra*; *Wax v. Co-Operative Refinery Assn.*, 154 Neb. 805, 49 N.W.2d 707 (1951). See, also, *Nared v. School Dist. of Omaha*, 191 Neb. 376, 215 N.W.2d 115 (1974) (applying rule to police officers). While the rule is commonly seen as applying to personal injuries to firefighters, it has been applied to damage of personal property as well. *Commonwealth v. Millsaps*, 232 Va. 502, 352 S.E.2d 311 (1987). The rule is also applicable to volunteer firefighters as well as paid firefighters. *Buchanan v. Prickett & Son, Inc., supra*; *Fentress v. Co-Operative Refinery Assn.*, 149 Neb. 355, 31 N.W.2d 225 (1948).

Under the fireman's rule, an injured firefighter cannot establish liability on the part of the property owner or occupant by simply establishing negligence in starting the fire, and therefore it is immaterial whether a fire was started by negligence or that such was continuing negligence. *Buchanan v. Prickett & Son, Inc., supra*. Such a rule is based on the premise that a firefighter who undertakes to fight a fire knows it exists and as a licensee ordinarily assumes the risk of the premises as he finds them. *Id.*

The rationale of the fireman's rule varies from jurisdiction to jurisdiction and has evolved over the years. Initially, the rule originated from the common-law premises liability rules by classifying a firefighter as a licensee to whom the owner or occupier of the premises owed only the duty to avoid inflicting injury by willful, wanton, or intentional acts. See, e.g., *Carson v. Headrick*, 900 S.W.2d 685 (Tenn. 1995) (discussing history of rule). As time passed, the common-law distinctions from which the fireman's rule originated were abandoned in many jurisdictions, including Nebraska. *Id.* See *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996). However, the

overwhelming majority of courts have reaffirmed the fireman's rule based on rationales of assumption of the risk or public policy considerations even though the classifications of premises liability have given way to one general standard of reasonable care under the circumstances. See *id.* See, also, *Hack v. Gillespie,* 74 Ohio St. 3d 362, 658 N.E.2d 1046 (1996); *Waggoner v. Troutman Oil Co.,* 320 Ark. 56, 894 S.W.2d 913 (1995). Because a number of jurisdictions have merged the doctrine of assumption of risk into their comparative fault schemes, many courts now cite public policy considerations as the sole basis for reaffirming the fireman's rule. *Carson v. Headrick, supra.* See, also, *Hack v. Gillespie, supra; Waggoner v. Troutman Oil Co., supra; Thomas v. Pang,* 72 Haw. 191, 811 P.2d 821 (1991); *Fox v. Hawkins,* 594 N.E.2d 493 (Ind. App. 1992); *England v. Tasker,* 129 N.H. 467, 529 A.2d 938 (1987); *Commonwealth v. Millsaps, supra.*

The public policy considerations supporting the fireman's rule are based on the nature of the service firefighters provide to the public. Firefighters are employed for the benefit of society in general and are on the premises of others not because of any private duty owed to the owner or occupier, but because of a duty owed to the public as a whole. *Thomas v. Pang, supra.* The purpose of a firefighter's profession is to confront danger. The public hires, trains, and compensates firefighters to deal with fires, which will inevitably occur. *Carson v. Headrick, supra.* Often, especially with fires, negligence causes the occasion for the firefighters' presence on the property. *Id.* Thus, it has been said that " '[i]t offends public policy to say that a citizen invites private liability merely because he happens to create a need for those public services.' " *Thomas v. Pang,* 72 Haw. at 197, 811 P.2d at 825, quoting *Pottebaum v. Hinds,* 347 N.W.2d 642 (Iowa 1984). Furthermore, it has been stated that principles of public policy should prevent a firefighter from complaining of negligence in the creation of a fire when the firefighter has been trained to deal with such situations at public expense. *England v. Tasker, supra.* Thus, there is the premise that a citizen should not be made to pay twice for the rendering of a public service, once through taxation and a second time through damages. *Id.* Finally, although entry onto a person's property by firefighters

is foreseeable, the timing of entry cannot be predicted, and while the firefighters are performing their duties, the owner or occupier is without authority to control their actions. *Thomas v. Pang, supra; England v. Tasker, supra.* Although we have previously framed the rule in terms of common-law premises liability, this court has also recognized that the costs of meeting the risks of fire should be borne by the government. *Buchanan v. Prickett & Son, Inc.,* 203 Neb. 684, 279 N.W.2d 855 (1979).

The thrust of the fire district's argument is that the fireman's rule does not apply because the initial fire set by Pletan was not accidental and because he was negligent in allowing the fire to burn out of control. However, these factors do not negate an application of the fireman's rule. The public policy rationale for the rule is that an owner or occupier of property should not be subjected to private liability because he or she created a need for public services. Accordingly, the rule itself is worded to negate liability to a firefighter by a person whose negligence causes or contributes to a fire. In addition, under public policy considerations it makes no difference that the initial fire was intentionally started by Pletan or was done so under a permit. Neither of these factors affects the underlying rationale of the rule that a firefighter is trained to confront danger at public expense. To conclude that an owner or occupier of property is subject to liability any time an intentionally set fire becomes out of control would negate application of the rule in many situations, such as fires resulting from the use of home fireplaces or campfires. Such a conclusion would undermine the public policy rationale for the rule, which recognizes that in many instances, the reason firefighters are on the scene is as a result of some form of negligence. Accordingly, the fireman's rule applies in the instant case.

Because the fireman's rule applies, Pletan had a duty only to refrain from injuring the fire district by willful or wanton negligence or a designed injury or to warn of hidden danger or peril known to him but unobservable by the firefighters in the exercise of ordinary care.

We have described "willful or wanton" as follows:

"In order for an action to be willful or wanton, the evidence must prove that a defendant had *actual* knowledge

that a danger existed and that the defendant *intentionally* failed to act to prevent harm which was reasonably likely to result. The term imparts knowledge and consciousness that injury is likely to result from the act done or the omission to act, and a constructive intention as to the consequences. [Citation omitted.]

"To constitute willful negligence the act done or omitted must be intended or must involve such reckless disregard of security and right as to imply bad faith. Wanton negligence has been said to be doing or failing to do an act with reckless indifference to the consequences and with consciousness that the act or omission would probably cause serious injury."

(Emphasis in original.) *Blackbird v. SDB Investments*, 249 Neb. 13, 19, 541 N.W.2d 25, 30 (1995), quoting *Guenther v. Allgire*, 228 Neb. 425, 422 N.W.2d 782 (1988). See, also, *Young v. Eriksen Constr. Co.*, 250 Neb. 798, 553 N.W.2d 143 (1996); *Wiles v. Metzger*, 238 Neb. 943, 473 N.W.2d 113 (1991).

In the instant case, the fire district's second amended petition alleged that Pletan was negligent in failing to isolate the area he intended to burn and in failing to warn the fire district of soft or wet areas on his property. The petition does not allege any acts of willful or wanton negligence or plead any facts to show willful or wanton negligence. Nor does the petition allege any actual knowledge on the part of Pletan that a danger existed or that Pletan intentionally failed to act to prevent harm.

Concerning the duty to warn, we have said that the owner or occupier of the premises owes a "duty to warn, *if an opportunity is afforded*, of hidden dangers known to the occupier but unknown to and not readily observable by the licensee." (Emphasis supplied.) *Lave v. Neumann*, 211 Neb. 97, 100, 317 N.W.2d 779, 781 (1982). See, also, *Hack v. Gillespie*, 74 Ohio St. 3d 362, 658 N.E.2d 1046 (1996) (no duty to warn when owner was not at residence at time of fire and not aware of plaintiff firefighter's presence on premises); *Price v. Morgan*, 436 So. 2d 1116 (Fla. App. 1983) (duty to warn arises once presence of firefighter on premises is known or should reasonably be anticipated). "Hidden dangers" have been defined as "those unusual hazards which are not normally anticipated and

not ordinarily incidental to fire fighting." *Thomas v. Pang*, 72 Haw. 191, 199, 811 P.2d 821, 826 (1991).

The fire district contends that Pletan should have foreseen the possibility of an out-of-control fire and warned the fire district of the soft spots at the time of the issuing of the permit. However, this argument ignores the fact that the duty to warn does not arise until the property owner is aware of the firefighters' presence on the property. Furthermore, the argument that Pletan had the opportunity and duty to warn of soft spots on his property at the time the permit was issued ignores the public policy rationale behind the fireman's rule that although entry by firefighters onto a property is foreseeable, the owner or occupier cannot predict the time of entry and is without authority to control the firefighters' actions while they perform their duties.

The record is clear that Pletan was not present at the time the firefighters entered his property or at the time the grass rig burned. Thus, Pletan did not have an opportunity to warn of soft spots about which he had knowledge, if any, prior to the time the grass rig burned, and Pletan did not breach any duty he may have had to warn the fire district about soft spots on his property. Except alleging that Pletan failed to warn, the fire district did not plead that Pletan was willfully or wantonly negligent in any other way. Accordingly, there are no issues of material fact and summary judgment in favor of Pletan was appropriate.

AFFIRMED.

STEPHAN, J., not participating.